**UNITED STATES of America**

v.

**Neil BYRNE and Daniel Cahalane.**

**Crim. No. 75–773.**

United States District Court,
E. D. Pennsylvania.

April 12, 1978.

See also, 3 Cir., 560 F.2d 601.

Brandon Alvey, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Jack J. Levine, Philadelphia, Pa., for Neil Byrne.

Thomas Colas Carroll, Philadelphia, Pa., for Daniel Cahalane.

## MEMORANDUM

BRODERICK, District Judge.

On June 21, 1976, defendants Neil Byrne and Daniel Cahalane were convicted by a jury of conspiracy and aiding and abetting the exportation of weapons without a license in violation of 18 U.S.C. § 371 and 22 U.S.C. § 1934. After hearing argument on their post-trial motions, the Court entered judgment of acquittal on the aiding and abetting counts. Our entry of judgment of acquittal on these counts was vacated by the Court of Appeals on August 11, 1977; however, the judgment of guilty in connection with the conspiracy count was affirmed.

At trial, many hours were spent in the cross-examination of Jack Nigro, a key Government witness, concerning among other things the fact that while he was a paid ATF informant he had gone unprosecuted by the Federal government for possession of a firearm with an unlawful silencer and that while he was a paid ATF informant, he was under a state court indictment which was later discharged. The defendants were not permitted, however, to cross-examine Mr. Nigro concerning some of his checks written in the two month period following the return of the indictments, which "bounced". *See United States v. Byrne*, 422 F.Supp. 147, 166–67 (E.D.Pa.1976). The Court's rulings in connection with the cross-examination of Mr. Nigro were affirmed by the Third Circuit, *United States v. Cahalane*, 560 F.2d 601, 607 (1977), *cert. denied* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978).

Defendants now move, pursuant to Fed. R.Crim.P. 33[1] for a new trial based upon

---

1. Rule 33 reads in pertinent part:
   The court on motion of a defendant may grant a new trial to him if required in the interest of justice. . . . A motion for a new trial based on the ground of newly discovered evidence may be made only before

allegedly newly discovered evidence; contending that an undisclosed arrangement existed between Mr. Nigro and the Government. For the reasons hereinafter set forth, we have denied defendants' motion without a hearing.

In their motion, defendants contend that on April 14, 1977, an investigator employed by the defendants had a chance meeting with Mr. Nigro in a "7–11" grocery store. The investigator, in an affidavit, claims as follows:

I, Ronald Christopher, do hereby depose and say that on the evening of April 14, 1977, at 11:00 P.M., I had a meeting with Jack Nigro at a 7–11 store on Easton Road, Willow Grove. Mr. Nigro, who had previously testified as a government informant in the matter of the *United States v. Neil Byrne, Et Al.* Mr. Nigro discussed with me his testimony during that trial and my investigation of his background. He stated that he had been confronted by agents of the government, after these agents had become aware of certain information pertaining to him, which had been developed by me during my investigation. He indicated that this information was damaging in itself and because of it he had to come clean with the government, tell them everything and make a deal. He stated that he was concerned that the defense would bring out this evidence against him during trial. He was not only concerned because he would be discredited, but was specifically concerned because his immunity did not extend to this area. He did not state what kind of deal he made, but said he was thankful that the agency that he made the deal with would not pass on the information to other government agencies. He stated that he and the government agents finally concluded that the defense was unable to analize the evidence we had accumulated against him, because if we had we would have surely been able to get it admitted into evidence. He indicated that the government, however, was more aware of what the evidence meant and therefore forced him to "come clean". He further advised that it was fortunate that the defense team was unable to evaluate the evidence because if they had, he and I may have been fitted for cement shoes.

▪ The granting of a Rule 33 motion is entrusted to the sound discretion of the trial court. *United States v. Plum,* 558 F.2d 568, 576 (10th Cir. 1977); *United States v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir. 1976). Before granting such a motion the trial court must be satisfied: (1) that the evidence is in fact newly discovered, i. e., discovered since the trial; (2) that facts are alleged from which the court may infer diligence on the part of the defendants; (3) that the newly discovered evidence is not merely cumulative or impeaching; (4) that the newly discovered evidence is material to the issues involved; and (5) that the evidence is of such a nature that at a new trial it would probably acquit the defendants. *United States v. Iannelli, id.*

For the purpose of discussing the Rule 33 motion filed in this case, we are willing to assume that the first and second requirements enumerated above have been satisfied.[2] We are convinced, however, that the remaining three requirements have not been satisfied.

▪ As to the third requirement, we find that this "newly discovered evidence" is both cumulative and impeaching. Assuming the truth of the allegations contained in the affidavit, the most one can infer from it is that Mr. Nigro was involved in some illegal activity, and that Government agents agreed that they "would not pass on the information to other government agencies." At best this would amount to a

---

or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case.

2. Defendants did, however, cross-examine Mr. Nigro on these very issues, *see infra,* and thus, even the first requirement may not have been satisfied.

cumulative attempt to impeach the witness' credibility. In no way, however, does the affidavit allege a contradiction of the testimony of Mr. Nigro concerning the illegal activity of the defendants.

Mr. Nigro had been given a use immunity in connection with his testimony. He was subjected to a searching cross-examination in connection with any understanding that he had with the Government in connection therewith.

Defendants' contentions are somewhat similar to those presented in *Casey v. United States*, 522 F.2d 206, 207 (5th Cir. 1975), *cert. denied*, 426 U.S. 909, 96 S.Ct. 2233, 48 L.Ed.2d 835 (1976), in which the defendant in a Rule 33 motion contended that a Government witness who at trial denied having made any agreement with the Government in connection with his testimony, was alleged by affidavit to have told another witness that he had made a deal with the Government for probation in exchange for his testimony. The court stated:

> The motion for a new trial is no more than an effort to impeach the testimony of [the witness], and newly discovered impeachment evidence is not sufficient to justify a new trial.

*Accord United States v. Solimine*, 536 F.2d 703, 709 (6th Cir.), *judgment vacated on other grounds*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976).

■ The fourth requirement which the defendants must satisfy before the Court should grant a Rule 33 motion is that the "newly discovered evidence" is material to the issues involved. Defendants in their brief contend that the investigator's affidavit establishes that at the time of trial Government agents were aware of the following information neither known nor disclosed to the defense:

(a) That Nigro had been involved in criminal conduct serious enough to get him "fitted in cement shoes" if its extent became known to the defense;

(b) That the defense knew that Nigro had trafficked in bad checks, but did not know about the underlying scheme;

(c) That Government investigators had learned of the Nigro bad checks discovered by the defense and had "confronted" Nigro with this information;

(d) That as a result of this confrontation, Nigro had to "come clean" and "make a deal" with the Government agents;

(e) That Nigro was "thankful" to them for protecting him; and

(f) That both Nigro and they had concluded "that the defense was unable to analyze the evidence we had accumulated against him, because if we had we would have surely been able to get it admitted into evidence."

Although this "newly discovered evidence" infers some alleged criminal conduct engaged in by the witness, it would not be admissible since there is no allegation that the witness was convicted of such alleged conduct or that it in any way concerns the illegal activities for which the defendants were being tried. We point this out because under Fed.R.Evid. 608(b):

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.
>
> . . .

Specific instances of illegal conduct by a witness for the purpose of attacking credibility is just the type of evidence which Rule 608(b) has been designed to exclude. *United States v. Turquitt*, 557 F.2d 464, 471 (5th Cir. 1977); *United States v. Harris*, 542 F.2d 1283, 1302 (7th Cir. 1976); *United States v. Estell*, 539 F.2d 697, 700 (10th Cir.), *cert. denied* 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976); *United States v. Simmons*, 444 F.Supp. 500, 507 (E.D.Pa. 1978).

■ To the extent that this "newly discovered evidence" in some way relates to an understanding entered into between a Government agent and the witness, it would be admissible. There is no question that the defendants had the right to cross-examine the witness in an effort to fully explore the extent of the understanding Mr.

Nigro had with the Government in connection with his testimony. *United States v. Mayer*, 556 F.2d 245, 249 (5th Cir. 1977); *United States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976); *United States v. Starks*, 515 F.2d 112, 119 (3d Cir. 1975); *See United States v. Harris*, 498 F.2d 1164 (3d Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974).

The defense was given ample opportunity to cross-examine Mr. Nigro concerning the full extent of his understanding with the Government; both at the pre-trial suppression hearing, and during the Government's case in chief. In addition, at the conclusion of the Government's case, the Court gave defendants the opportunity to recall Mr. Nigro for further cross-examination; however, the defendants declined to avail themselves of this opportunity. At the trial, this Court made it abundantly clear that the defendants had the right to fully explore the extent of the witness' agreement with the Government in connection with Mr. Nigro's testimony. As we stated in our memorandum of October 12, 1976:

> The Court ruled that defense counsel could question the witness concerning any agreement which the witness had with the Government in connection with his testifying at the trial. The defense thoroughly explored Nigro's motives in working with the Government agents; rather than being restricted, defense counsel were permitted wide latitude in their cross-examination.

*United States v. Byrne*, 422 F.Supp. 147, 167 (E.D.Pa.1976) (citation omitted).

■ As we have heretofore pointed out, this evidence, at best, would be cumulative and impeaching. This evidence is in no way material to the issues involved in this case, that is, whether the defendants entered into a conspiracy or aided and abetted in the exportation of weapons without a license. The only purpose the "newly discovered evidence" could serve would be to impeach Mr. Nigro's credibility. As stated by the court in *United States v. Solimine*, 536 F.2d 703, 709 (6th Cir.), *judgment vacated on other grounds*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976):

> Evidence that discredits a witness, but does not directly contradict the government's case is not a ground for granting a new trial.

*Accord, United States v. Bryant*, 563 F.2d 1227, 1230–31 (5th Cir. 1977); *United States v. Brashier*, 548 F.2d 1315, 1327 (9th Cir. 1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977); *United States v. Pollack*, 175 U.S.App.D.C. 227, 534 F.2d 964, 975, *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976).

The final requirement for granting a new trial on the basis of "newly discovered evidence" is that the evidence is of such a nature that at a new trial it would probably acquit the defendants. *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976); *United States v. Matthews*, 424 F.Supp. 339, 343 (E.D.Pa.1976). The Court has considered all of the evidence produced at trial and finds that the newly discovered evidence being simply cumulative and impeaching as to the credibility of Mr. Nigro, is not of such a nature that at a new trial it would probably produce an acquittal.[3]

■ The foregoing discussion suffices to demonstrate the failure of the defendants to meet the prerequisites for a new trial set out in *Iannelli*. Moreover, inasmuch as the documents and affidavit filed by defendants disclose the inadequacies of the defendants' Rule 33 motion and since there was no genuine issue of material fact which had to be resolved, a hearing was not required in connection with this motion. *United States v. Nace*, 561 F.2d 763, 772 (9th Cir. 1977); *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977); *United States v. Adcock*, 558 F.2d 397, 405 (8th Cir. 1977); *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1978); 8A *Moore's Federal Practice*; Criminal ¶ 33,03[3]; *cf. Ian-*

---

3. For a detailed summary of the evidence see *United States v. Byrne*, 422 F.Supp. 147 (E.D. Pa.1976).

**114**

*nelli*, 528 F.2d at 1292; *United States v. Brewer*, 360 F.2d 112, 113 (3d Cir. 1966); *United States v. Caramandi*, 415 F.Supp. 443, 449 (E.D.Pa.1976). Accordingly, the Court has heretofore denied the defendants' Rule 33 motion.

█ The Court considered the defendants' motion for "A New Trial Based Upon Newly Discovered Evidence" as a Rule 33 motion. The affidavit filed by the defendants describing the "newly discovered evidence" contains no allegation that the "newly discovered evidence" was known by the prosecutors or in their files. Hence the affidavit containing the "newly discovered evidence" contains no allegation or inference that counsel for the Government suppressed evidence favorable to the accused. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment. The attorneys who prosecuted the case for the Government filed an affidavit in which they state that the entire scope of the understanding which they had with Mr. Nigro in connection with his testimony was revealed to the defendants and that they have no knowledge of any evidence in the case concerning Mr. Nigro which was not furnished to defense counsel. Neither the defendants' briefs nor affidavit filed in connection with this motion contain any factual allegations contradicting the Government's affidavit; thus, this Court was not presented with the situation in which it was required to hold a hearing for the purpose of determining whether there was a violation of the *Brady* rule.