UNITED STATES of America

v.

William REILLY.

Crim. No. 77–476.

United States District Court,
E. D. Pennsylvania.

July 18, 1978.

Robert N. deLuca, Acting U. S. Atty., Edward S. G. Dennis, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Thomas Colas Carroll, Philadelphia, Pa., for defendant.

## MEMORANDUM

BRODERICK, District Judge.

Defendant, William Reilly, was found guilty by a jury on a two-count indictment charging him with attempted extortion and extortion in violation of the Hobbs Act, 18 U.S.C. § 1951.[1] Defendant has filed a motion renewing his motion for judgment of acquittal which he made at the time of trial. In the alternative, he has moved for arrest of judgment or for a new trial. Oral argument was had on the motions. For the reasons hereinafter set forth, defendant's motions will be denied.

### I. *Motion for Judgment of Acquittal.*

In his motion for judgment of acquittal, defendant contends that the evidence was

---

1. 18 U.S.C. § 1951 provides in pertinent part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

\* \* \* \* \* \*

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. . . .

insufficient to support the jury's verdict in connection with Counts I and II, and that the evidence was insufficient to find that the defendant acted under "color of office". The evidence produced at trial, viewed in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Cahalane*, 560 F.2d 601, 603 (3d Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978), is more than sufficient to support the verdict and to find that the defendant acted under "color of office". We summarize it as follows:

The defendant has been employed at West Chester State College ("the college" or "West Chester") in West Chester, Pennsylvania since 1970. Until 1975 he held the position of Deputy Assistant to the Director of Physical Planning. In 1975, the defendant was promoted to the position of Director of Facilities at the college. The Government's case was built primarily around the testimony of Donald Radbill, a contractor who had worked on construction contracts at the college, and tape recordings of conversations between Mr. Radbill and the defendant, which were played at trial.

Mr. Radbill testified that his dealings with the college and the defendant went back to 1971 and that, as a result of these past dealings, it was his understanding that in order to be awarded a bid contract and to be assured of expedited payment from the state, the defendant demanded a cash payment. He further testified that it was his understanding, based upon his conversations with the defendant, that the defendant had the ability to control who would be the successful bidder on contracts of less than $25,000 at the college. Mr. Radbill stated that in the summer of 1976, bid invitations were being prepared for the resurfacing and striping of parking lot K at the college. Prior to mailing the bid invitations, the defendant met with Mr. Radbill and demanded "two bills" for the award of this contract. Over the next year, Mr. Radbill testified that he paid the defendant $2,000 in installments. The last installment of $1,000 was not paid until after Mr. Radbill had been advised that the defendant

had removed him from the list of bidders. Mr. Radbill testified that he made the final payment of $1,000 to the defendant on October 19, 1977, the day the FBI arrested the defendant and a search incident to the arrest revealed the $1,000 in marked money. The tape recordings substantially corroborated Mr. Radbill's testimony.

■ The defendant took the stand in his own defense. He admitted that Mr. Radbill had paid him $2,200, but claimed that the payments were for services which he had rendered to Mr. Radbill. The Government's case was strong, and the evidence was more than sufficient to support the jury's verdict as to each of the two counts of the indictment.

■ Defendant also contends that the evidence was insufficient to support the jury's finding that the defendant acted under "color of office". As the Third Circuit has recently made clear, extortion under the Hobbs Act can be established either when property is obtained through the use of fear or by one acting under color of official right. *United States v. Mazzei*, 521 F.2d 639, 644–45 (3d Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975); *United States v. Kenny*, 462 F.2d 1205, 1229 (3d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *see also United States v. Harding*, 563 F.2d 299, 305–06 (6th Cir. 1977). Fear within the meaning of the Hobbs Act embraces fear of economic loss as well as fear of physical violence. *United States v. Addonizio*, 451 F.2d 49, 72 (3d Cir. 1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); *see United States v. Duhon*, 565 F.2d 345, 351 (5th Cir. 1978). Thus, for the jury to have convicted the defendant it would have had to find beyond a reasonable doubt either that he acted under color of official right or that the payments were made through the use of fear of economic loss. There was sufficient evidence in this record for the jury to find beyond a reasonable doubt that Mr. Radbill was placed in fear of economic loss by the defendant's actions. In addition, there was ample evi-

dence to support the jury's finding beyond a reasonable doubt that the defendant was acting "under color of official right" within the meaning of the Hobbs Act. West Chester is a state owned and operated institution of higher learning within the Commonwealth of Pennsylvania. 24 P.S. § 20–2002. The Director of Facilities at West Chester State College is paid from the Treasury of the Commonwealth of Pennsylvania and is afforded the protection of the Pennsylvania Civil Service system and upon retirement is entitled to state pension benefits. As Director of Facilities, the defendant was responsible for supervising all departments within the facilities division which includes over 200 employees. It was his responsibility to develop requirements for the college budget related to the construction, maintenance and repair of the physical facilities at the college. He had major responsibility in connection with construction projects at the college costing $25,000 and less, and a vital administrative role in projects exceeding that amount. Moreover, the ultimate question for the jury was not whether the defendant in his official capacity had the power to control the selection of bidders on projects at the college, but rather whether it was reasonable for Mr. Radbill to believe that the defendant's position gave him this power. As stated by the Third Circuit in *United States v. Mazzei,* 521 F.2d at 643:

> It is clear, of course, that defendant had no statutory power as a state senator to control the granting of leases by state executive agencies. But in order to find that defendant acted "under color of official right", the jury need not have concluded that he had actual *de jure* power to secure grant of the lease so long as it found that Kelly held, and defendant exploited, a reasonable belief that the state system so operated that the power in fact of defendant's office included the effective authority to determine recipients of the state leases here involved. . . .
> The issue of Kelly's belief and its reasonableness was a jury question . . . .

*See also United States v. Harding,* 563 F.2d 299, 306–7 (6th Cir. 1977). In the instant case, Mr. Radbill's belief in the defendant's

power over the selection of the successful bidder is amply established by the record. The tape recordings, as well as Mr. Radbill's testimony, lend ample support for the jury's determination that Mr. Radbill's belief was reasonable, and that this belief was exploited by the defendant.

II. *Motion for Arrest of Judgment.*

Defendant advances two grounds in support of his motion for arrest of judgment:

(a) That the indictment, to the extent that it purports to allege a violation of the Hobbs Act "under color of office", does not state an offense cognizable under the laws of the United States; and

(b) That the Court erred in failing to dismiss the indictment where the Government had presented its case to the grand jury through Agent Duall, a hearsay witness, rather than through the testimony of Donald Radbill, who was the only person with first-hand knowledge of the operative facts of this prosecution and who was available to testify before the grand jury.

The first issue merits little discussion in light of the Third Circuit's opinions in *United States v. Mazzei,* 521 F.2d 639 (3d Cir.), cert. denied, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975) and *United States v. Kenny,* 462 F.2d 1205 (3d Cir.), cert. denied, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972), in which the court held that an offense was stated under the Hobbs Act for extortion committed under color of office.

As to the second issue, at the start of the trial the defendant moved to dismiss the indictment on the ground that the grand jury had been presented only with hearsay testimony through FBI special agent Duall, an agent who was involved in the Government's investigation in this matter. The Court denied the defendant's motion to dismiss the indictment. The law is clear that the grand jury constitutionally may consider hearsay evidence. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *see Bracy v. United States,* 435 U.S. 1301, 98 S.Ct. 1171, 1172, 55 L.Ed.2d 489 (1978). However, defendant

contends that the prosecutorial practice of using hearsay testimony in presenting a case to the grand jury when first-hand testimony is readily available "has the effect of depriving the defense of an opportunity to cross-examine key government witnesses concerning prior statements under oath", and thereby undermines the intent of the Jencks Act, 18 U.S.C. § 3500. A similar contention was made in *United States v. Short*, 493 F.2d 1170, 1172–73 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974), wherein the court, in rejecting defendant's claim, stated:

> Short argues that the indictment should have been dismissed because the testimony before the grand jury was predominantly hearsay and the government did not bring the key witness, Qualls, before the grand jury. He argues that in relying on hearsay, the government undermined the spirit and effectiveness of the Jencks Act, 18 U.S.C. § 3500, by denying the defense the opportunity to impeach the key government witness with a Jencks Act statement. The failure of the government to produce key witnesses before the grand jury and its reliance upon hearsay in grand jury proceedings does not substantially hinder the advancement of some of the goals of the Jencks Act . . . . However, the Supreme Court has held and this circuit has consistently reaffirmed that hearsay evidence is admissible before the grand jury. . . .

> It has been held that, where the prosecutor has deceived the grand jury into believing that it is receiving first hand information rather than hearsay, or where there is a high probability that with direct testimony the grand jury would not have indicted the defendant, a reversal is required. *United States v. Estepa*, 2 Cir., 1972, 471 F.2d 1132, 1137. We do not face this question here. Short does not argue that such abuses appear on this record.

*See also United States v. Chanen,* 549 F.2d 1306, 1311 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977); *United States v. Cruz,* 478 F.2d 408, 410–11 (5th Cir. 1973), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1974).

■ Moreover, as the Supreme Court recently stated in *United States v. Calandra,* 414 U.S. 338, 344–5, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974):

> The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . .

■ In support of his contention that the indictment should have been dismissed, defendant cites a series of Second Circuit opinions: *United States v. Estepa,* 471 F.2d 1132, 1136–37 (2d Cir. 1972); *United States v. Leibowitz,* 420 F.2d 39, 41–42 (2d Cir. 1969); *United States v. Arcuri,* 405 F.2d 691 (2d Cir. 1968), *cert. denied,* 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969); *United States v. Malofsky,* 388 F.2d 288, 289 (2d Cir.), *cert. denied,* 390 U.S. 1017, 88 S.Ct. 1273, 20 L.Ed.2d 168 (1968); *United States v. Umans,* 368 F.2d 725, 730–31 (2d Cir. 1966). The rule [2] established by the Second Circuit, as summarized by the court in *United States v. Cruz,* 478 F.2d at 410, is that an indictment based on hearsay is invalid where: "(1) non-hearsay evidence is readily available; (2) the grand jury is misled into believing that it was hearing direct testimony rather than hearsay; and (3) there is a high probability that had the grand jury heard the eye witnesses it would not have indicted." Even if this Court were to apply this Second Circuit guideline to the instant case, the indictment would not have been dismissed. While it is undisputed that the

---

2. The Second Circuit has not considered this "rule" to be a constitutional requirement. *United States v. Callahan,* 439 F.2d 852, 859–60 (2d Cir.), *cert. denied,* 404 U.S. 826, 92 S.Ct. 56, 30 L.Ed.2d 54 (1971). Rather, it serves simply as a supervisory guideline to be employed by

courts within their sound discretion to protect potentially innocent citizens from possible prosecutorial manipulation of grand jury proceedings. *United States v. Estepa,* 471 F.2d 1132, 1136–37 (2d Cir. 1972).

government could have produced Mr. Radbill before the grand jury, there can be little doubt in light of the jury's verdict that had Mr. Radbill appeared before the grand jury, it would have indicted the defendant. Moreover, the Assistant United States Attorney represented to the Court that the grand jury was aware that the testimony of Agent Duall was hearsay and that the grand jury was not mislead. *See United States v. Marchand,* 564 F.2d 983, 1001 n. 29 (2d Cir. 1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978).

### III. *Motion for New Trial.*

Defendant claims the following errors in support of his motion for a new trial:

(a) The Court erred in denying defendant's motion for production and inspection of all statements, including grand jury testimony and FBI reports of Radbill's cooperation with the government within the scope of the immunity agreement, which cooperation would have demonstrated that Radbill had committed criminal offenses for which he had been immunized;

(b) The Court erred in denying defendant's motion to dismiss the indictment for the reasons stated above in connection with defendant's motion for arrest of judgment;

(c) The Court erred in refusing defendant's motion to strike the allegations concerning "under color of office" in the indictment;

(d) The Court erred in denying defendant's motion to compel the government to elect between the charges of attempt and the completed act of extortion under the Hobbs Act;

(e) The Court erred in denying to grant a mistrial when the prosecutor stated in the presence of the jury that one of the Government's exhibits was a "suppression" exhibit;

(f) The Court erred in its instructions to the jury that the defendant could be convicted of the offenses alleged in this indictment if he acted under "color of office" without instilling any fear of financial or economic harm;

(g) The Court erred in declining to compel the government to turn over to the defense the notes of Internal Revenue Service Agents' interviews with Donald Radbill;

(h) The Court erred in admitting into evidence the tape recordings in this action for the reason that Radbill had not given "consent" to the tapings within the meaning of applicable law;

(i) The Court erred in admitting, over objection, evidence of the alleged incident during 1971 when Radbill paid the defendant $500 for the reason that this incident was too remote in time to be probative in this prosecution.

### (a) *Radbill's statements and FBI reports concerning Radbill's cooperation.*

Donald Radbill, the key government witness in this case, was given immunity by the government in return for his testimony in connection with this case and three other investigations. Defendant requested that the government produce the transcripts of Mr. Radbill's testimony before the grand jury and FBI reports of interviews with Mr. Radbill. The government objected to turning this material over to the defendant. The Court conducted an *in camera* inspection of these materials. Our examination focused on three separate legal theories to determine whether under any one of them, the materials should be turned over: (1) Jencks Act; (2) *Brady* material; and (3) "scope of the immunity agreement". We determined that none of these theories mandated the turning over of this material.

### (1) *Jencks Act.*

The Jencks Act, 18 U.S.C. § 3500, provides in pertinent part:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the

subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. . . .

\* \* \* \* \* \*

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

 The government contended that the FBI reports and the grand jury transcript did not relate to the subject matter of Mr. Radbill's testimony during direct examination. Pursuant to the procedure mandated by the Jencks Act itself, 18 U.S.C. § 3500(c), and endorsed by the Third Circuit in *United States v. Scolnick*, 392 F.2d 320, 327 (3d Cir.), *cert. denied*, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968), we examined this material *in camera* to determine whether it related to the subject matter of Mr. Radbill's testimony on direct examination. It was our determination that it did not relate to his testimony. Rather, the material concerned his cooperation with the government in connection with wholly distinct investigations. Since it was represented to the Court that these other investigations were present, on-going criminal investigations involving illegal activity as to which criminal charges had not yet been brought, in view of our determination that it did not relate to the subject matter of the witness' testimony on direct examination, we found that it was not in the public interest to make this information available to the defendant.[3] As the Supreme Court has recently noted, one of the goals of the Jencks Act was to prevent "defendants from 'rummag[ing] through confidential information containing matters of public interest, safety, welfare, and national security.'" *Goldberg v. United States*, 425 U.S. 94, 104, 96 S.Ct. 1338, 1345, 47 L.Ed.2d 603 (1976).

### (2) *Brady Material.*

 In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the suppression by

---

**3.** Under the Jencks Act, the court's role is limited to determining whether the material relates to the subject matter of the witness' testimony, and not whether this information would be useful to the defendant. *See United States v. Johnson*, 521 F.2d 1318, 1320 (9th Cir. 1975); *United States v. Polizzi*, 500 F.2d 856, 893 (9th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975).

the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment. Our *in camera* review of the material submitted by the government convinced us that it contained no *Brady* material. *Cf. United States v. Judon*, 567 F.2d 1289, 1293–94 (5th Cir. 1978).

### (3) *Scope of Immunity Agreement.*

As heretofore pointed out, Donald Radbill, the key government witness in this case, was given immunity by the government in return for his testimony in connection with this and three other investigations. Realizing the importance of allowing the defendant to cross-examine the witness to bring out the full extent of the immunity agreement, we refrained from placing any restrictions on his cross-examination of Mr. Radbill in this area. *See United States v. Crumley*, 565 F.2d 945, 949–50 (5th Cir. 1978); *United States v. Mayer*, 556 F.2d 245, 249 (5th Cir. 1977); *United States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976); *United States v. Greenberg*, 423 F.2d 1106, 1108 (5th Cir. 1970); *United States v. Byrne* (E.D.Pa.1978), 451 F.Supp. 109 at 112–113.

■ The government made available to the defendant the immunity agreement entered into between the government and Mr. Radbill (with the names of the individuals against whom Mr. Radbill would supply information deleted). (*See* Appendix A.) Furthermore, at trial the government supplied the defendant with a letter detailing Mr. Radbill's involvement in the matters concerning which he was cooperating with the government and in return for which he was being immunized. (*See* Appendix B.) Moreover, the defendant was given a full opportunity to cross-examine Mr. Radbill concerning the full extent of the immunity agreement. The Court finds that its determination that it would have been against public interest to make the *in camera* material available to public scrutiny in no way precluded the defendant from learning, or revealing to the jury, the full extent of the immunity agreement and price which the government paid for Mr. Radbill's testimony.

### (g) *IRS notes of interviews with Mr. Radbill.*[4]

■ Defendant requested that the government turn over for his inspection IRS notes of interviews they conducted with Mr. Radbill contending that these notes constituted "statements" of Mr. Radbill producible under the Jencks Act.[5] In *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976), the Supreme Court clarified the meaning of "statement" for purposes of the Jencks Act, and held that writings must be produced only to the extent that they constitute statements within the meaning of the Act. *Id.* at 105, 96 S.Ct. 1338. As stated by the Court:

> Every witness interview will, of course, involve conversation between the lawyer and the witness, and the lawyer will necessarily inquire of the witness to be certain that he has correctly understood what the witness has said. Such discussions of the general substance of what the witness has said do not constitute adoption or approval of the lawyer's notes within § 3500(e)(1), which is satisfied only when the witness has "signed or otherwise adopted or approved" what the lawyer has written. This requirement

---

**4.** Defendant's contentions (b) and (c) were heretofore discussed in connection with his motion for arrest of judgment. As to defendant's contention (d), attempted extortion is an offense under the Hobbs Act, *United States v. Rosa*, 560 F.2d 149, 153 (3d Cir. 1977), and the government has the option of indicting and trying as two separate counts of the indictment the attempted extortion and the completed act of extortion. *Cf. United States v. Malasanos*, 472 F.2d 642, 643 (7th Cir. 1973). The convic-

tions on the two counts will, of course, merge for purposes of sentencing. Defendant's contention (f) is without merit in light of the Third Circuit's decisions in *United States v. Mazzei*, 521 F.2d 639 (3d Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975), and *United States v. Kenny*, 462 F.2d 1205 (3d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

**5.** *See* pp. 217–218, *supra.*

clearly is not met when the lawyer does not read back, or the witness does not read, what the lawyer has written. *Id.* at 110 n. 19, 96 S.Ct. at 1348.

■ To determine whether these notes constituted Mr. Radbill's statements within the meaning of the Act, we held a hearing outside the presence of the jury. The IRS agents who had conducted the interviews and made the notes in question testified that they had not read their notes to Mr. Radbill, nor was Mr. Radbill given an opportunity to read them, and that he in no way adopted or approved the notes. They further testified that the notes were not verbatim, but consisted of sentence fragments, names and numbers. Based upon this testimony, and on our independent review of the notes, we concluded that these notes did not constitute "statements" of Mr. Radbill, and therefore were not producible under the Jencks Act. *See United States v. Walden,* 578 F.2d 971 at 966 (3d Cir. 1978).

(h) *Mr. Radbill's consent to the tapes.*

Defendant contends that Mr. Radbill's consent to be tape recorded was not given voluntarily within the meaning of the applicable law in that the immunity agreement which Mr. Radbill entered into with the government required him to consent to these recordings. This argument is premised on the principle that such recordings are permissible only if the person cooperating with the government consents freely to the taping. *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *Rathbun v. United States,* 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); *United States v. Osser,* 483 F.2d 727, 730 (3d Cir.), *cert. denied,* 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321 (1973). As provided in 18 U.S.C. § 2511(2)(c):

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

The Court held a hearing outside the presence of the jury in connection with this matter. Mr. Radbill testified that he had voluntarily entered into an immunity agreement with the government pursuant to which he was required to consent to the recordings, which he did. He stated that he had wanted to cooperate with the government because "he thought it was the right thing to do," partly because of the criminal offenses in which he had been involved and his hope for leniency in connection therewith, and partly because of the "moral issues" involved, but that in no way did he cooperate because he felt coerced or threatened. He did testify, however, that once had had committed himself to the agreement, he felt that he had no choice but to go forward with it.

The defendant cites *United States v. Laughlin,* 222 F.Supp. 264 (D.D.C.1963) in support of his contention that Mr. Radbill's consent was not voluntary. The *Laughlin* court held that a witness' consent to recordings made with the clear hope of leniency, and the implied threat of being indicted if she did not cooperate did not constitute voluntary consent under the law. *Id.* at 268–69.

■ The Third Circuit has dealt with a similar situation in *United States v. Osser,* 483 F.2d 727, 730 (3d Cir.), *cert. denied,* 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321 (1973), wherein the court stated: "[o]ur inquiry on appeal is limited to whether the consent was voluntary and uncoerced, not whether the motivations for it were altruistic or self-seeking." As stated by my colleague, Judge Becker, "[w]hile *Osser* does not elucidate a comprehensive standard for measuring the validity of consent, it does indicate that so long as pressure is not initiated by the police for the purpose of overbearing the will of the 'consenting' party, the authorization is valid." *United States v. Baynes,* 400 F.Supp. 285, 292 (E.D. Pa.1975). On the basis of the hearing and of our review of the case law, we found that Mr. Radbill's consent was voluntarily given within the meaning of the applicable

law. *See United States v. Gladney,* 563 F.2d 491, 493 (1st Cir. 1977); *United States v. Hodge,* 539 F.2d 898, 904–05 (6th Cir. 1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977); *United States v. Bonanno,* 487 F.2d 654, 658–59 (2d Cir. 1973); *United States v. Dowdy,* 479 F.2d 213, 229 (4th Cir.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973); *United States v. Jones,* 140 U.S.App.D.C. 70, 433 F.2d 1176 (1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971); *Good v. United States,* 378 F.2d 934 (9th Cir. 1967).

(i) *1971 incident.*

■ Defendant contends that the Court erred in admitting, over objection, evidence of the alleged incident during 1971 when Mr. Radbill paid the defendant $500 because this incident was too remote in time to be probative in this prosecution. However, this evidence was admissible under Fed.R.Evid. 404(b) which provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformance therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The incident was highly relevant to show motive, intent, plan and absence of mistake or accident on the part of the defendant, and to show Mr. Radbill's state of mind. *United States v. Davis,* 576 F.2d 1065 at 1067–68 (3d Cir. 1978); *United States v. Rispo,* 470 F.2d 1099, 1101 (3d Cir. 1973); *United States v. Frumento,* 426 F.Supp. 797, 804 (E.D.Pa.1976), *aff'd,* 552 F.2d 534 (3d Cir. 1977). Having determined that the information was relevant, we then balanced the probative value of the proffered testimony against its possible prejudicial effects. *Government of the Virgin Islands v. Felix,* 569 F.2d 1274, 1280 (3d Cir. 1978); Fed.R. Evid. 403. We found that the relevancy of this testimony outweighed its prejudicial effect. *See United States v. DeVincent,* 546 F.2d 452, 456–57 (1st Cir. 1976), *cert.*

*denied,* 431 U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977). However, in order to limit the prejudicial effect, if any, this evidence might have against the defendant, we gave the following instruction to the jury:

Ladies and Gentlemen of the Jury, there has been some evidence introduced over the course of this trial concerning contracts other than parking lot K at West Chester State College. I instruct you that such evidence was admitted solely for the purpose of showing motive, intent, plan or absence of mistake or accident. I further instruct you that the only crimes which you are to consider are whether the defendant, as alleged in the indictment, induced and or attempted to induce Donald Radbill to part with property by extortion adversely affecting interstate commerce in connection with a contract concerning parking lot K at West Chester State College. I further instruct you that you are not to consider whether the defendant is guilty or innocent of any crimes other than the crimes alleged in this indictment. The defendant is not charged with any crime in connection with any transaction other than the contract concerning parking lot K.

While we do not herein discuss all the contentions of alleged error raised by the defendant, we have considered each and every allegation of error and hold that none of them, singly or collectively, is of sufficient substance to merit any further discussion as a basis for granting a judgment of acquittal, arrest of judgment or new trial in this case.

Accordingly, an Order will be entered denying the defendant's motions for judgment of acquittal, arrest of judgment and new trial.

EXHIBIT A

MEMORANDUM OF UNDERSTANDING

This will constitute a Memorandum of Understanding between the United States of America, by its attorneys, DAVID W.

 MARSTON, United States Attorney in and for the Eastern District of Pennsylvania, EDWARD S. G. DENNIS, JR., Assistant United States Attorney for said District, on the one hand, and Donald N. Radbill, on the other hand, relative to the cooperation and testimony of Donald N. Radbill

related to the federal criminal investigation of political and governmental corruption in

Pennsylvania.

It is the understanding of the parties hereto that Mr. Radbill is prepared to cooperate fully with federal government attorneys and investigators with respect to the above described investigation upon the understanding that he, Mr. Radbill, will not be subjected to future criminal prosecution resulting from the use of his cooperation in this regard for or on account of or related to any transaction, matter or thing about which he cooperates. However, it is understood between the parties that Donald N. Radbill is and will remain subject to prosecution as to the federal income tax case presently certified and sealed with the United States District Court at Miscellaneous Number 77-24. It is agreed that in the event Mr. Radbill does so cooperate as defined herein, with the Government attorneys and investigators in this matter, that no testimony or other information derived from Mr. Radbill will be used against him in any criminal case except the prosecution for perjury, or giving a false statement, which perjury or giving of a false statement is subsequent to this memorandum. It is understood that in return for Mr. Radbill's complete cooperation, as defined herein, the Government will recommend in the event of conviction on the aforementioned federal income tax prosecution that Mr. Radbill be placed on probation.

By the term "complete cooperation" the United States Attorney's Office understands that Mr. Radbill will provide full and truthful responses to all questions asked by the Government attorneys and agents with respect to his complete knowledge and information regarding the above described criminal investigation; and that he will provide truthful testimony pursuant to a subpoena in any proceeding including grand jury and trial. It is further agreed that Donald N. Radbill will consent to the use and cooperate in the use of tape recorders and other electronic devices.

It is agreed by Donald N. Radbill that under this agreement he is obligating himself to provide truthful testimony and unreserved disclosures regarding any and all of the above-defined matters of which he has knowledge. Moreover, as part of this undertaking, Donald N. Radbill will hold himself reasonably available for all interviews which the Government requires, and will upon reasonable notice testify upon request in sworn agent interviews. These obligations by Donald N. Radbill are in addition to his obligation to testify before a Federal Grand Jury and at trial as above described. In all cases, Donald N. Radbill shall have the right to the presence of (other than before the Grand Jury) and the free ability to consult with his counsel at all times.

It is understood that "truthful testimony" requires that Donald N. Radbill avoid falsely implicating any person as well as avoid protecting any person or omitting any inculpatory testimony.

Any demonstrably false statement made after the date of this memorandum by Donald N. Radbill can and will be prosecuted as perjury. Any significant and wilful withholding of information by Donald N. Radbill will terminate all obligations contained herein.

FEB. 2, 1977
DATE

/s/ DAVID W. MARSTON
United States Attorney

February 2, 1977
DATE

/s/ EDWARD S. G. DENNIS, JR.
Assistant United States
Attorney

Feb 3, 1977
DATE

/s/ DONALD N. RADBILL

EXHIBIT B

United States Department of Justice

UNITED STATES ATTORNEY
EASTERN DISTRICT OF PENNSYLVANIA
3310 UNITED STATES COURTHOUSE
INDEPENDENCE MALL WEST
601 MARKET STREET
PHILADELPHIA, PENNSYLVANIA 19106

ADDRESS REPLY TO
UNITED STATES ATTORNEY
AND REFER TO
INITIALS AND NUMBER
RND:ESGD:bjr

June 6, 1978

Thomas Colas Carroll, Esquire
326 Three Penn Center
Philadelphia, PA 19102

Re: United States v. William Reilly
Criminal No. 77-476

Dear Mr. Carroll:

In an effort to resolve the issues raised by your request for disclosure of FBI reports and Grand Jury testimony related to Mr. Radbill's cooperation with the Government in investigations other than those involving your client, I make the following representations to you.

1. Mr. Radbill disclosed to the Government, while under immunity, that his company had at one time been awarded a materials contract by a local government body to supply traffic materials. After being awarded this contract, Mr. Radbill failed to receive any of the township's business. Mr. Radbill then disclosed that he approached a Township official and asked why his company had received no work under this contract. Mr. Radbill was advised by the township official that he, Mr. Radbill, had not taken care of this official. After that meeting, Mr. Radbill stated that he made several contributions to the official's political party and that he periodically made cash payments to the township official. These payments amounted to approximately $300 to $500 a year over a period of several years. Mr. Radbill advised that at the end of this period, the official's demands became unreasonable and he, Mr. Radbill, thereafter ignored these demands. Mr. Radbill received no further work under the contract and did not bid for renewal of the contract.

2. Mr. Radbill disclosed that his company had been awarded a contract by a state agency. Mr. Radbill disclosed that while working under the contract, he made a complaint to an official of the agency for which he was performing the work that unreasonable demands were being made upon him by agency employees. Mr. Radbill stated that this official responded that he was not sure that he would be able to do anything for Mr. Radbill. Mr. Radbill then asked the official what he could do for him and the official told him. As a result of this meeting, Mr. Radbill gave to the official an item costing in excess of $2,000.

3. Mr. Radbill advised that he had become aquainted with an official in a state agency who on one occasion supplied him with information Mr. Radbill was able to utilize in successfully bidding on a contract with that agency. After the contract was awarded to his company, Mr. Radbill paid that official approximately $2,500 in cash in return for his assistance on the

224

contract. Mr. Radbill stated that prior to that he had made a payment of several hundred dollars at Christmas but this was not subject to any demand of the official. Mr. Radbill also disclosed that he had expended several hundred dollars on an item of value which was a gift to the official. This gift was not made to the official on account of an expressed demand by the official made to Mr. Radbill. However, the official had stated in Mr. Radbill's presence that he desired to have this item.

Very truly yours,

Robert N. deLuca
United States Attorney

Edward S. G. Dennis, Jr.
Assistant United States Attorney

cc: Honorable Raymond J. Broderick