UNITED STATES of America,
Appellant,

v.

Gerard P. TROTTA,
Defendant-Appellee.

No. 289, Docket 75–1267.

United States Court of Appeals,
Second Circuit.

Argued Sept. 29, 1975.

Decided Nov. 10, 1975.

Edward R. Korman, Chief Asst. U. S. Atty., E.D.N.Y. (David G. Trager, U. S. Atty., E.D.N.Y., on the brief), for appellant.

Herbert A. Lyon, Kew Gardens, N.Y. (Lyon & Erlbaum, William M. Erlbaum, and Charles Wender, Kew Gardens, N.Y., on the brief), for appellee.

Before LUMBARD, ANDERSON and VAN GRAAFEILAND, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

■ The appellee, Gerard P. Trotta, was indicted [1] on two counts of extortion under the Hobbs Act, 18 U.S.C. § 1951, based on acts which he allegedly committed while Commissioner of Public Works of the Town of Oyster Bay, Long Island. The indictment charges that Trotta demanded and induced the payments of $2,000 and $1,000, under the respective

1. The indictment reads, in relevant part, as follows:

"1. At all times relevant herein, William F. Cosulich Associates was a partnership organized under the laws of the State of New York to perform services as consulting engineers. William F. Cosulich Associates provided these services for public bodies and agencies in the State of New York, including the Town of Oyster Bay, Long Island, and other states. . . .

2. The defendant Gerard P. Trotta, at all times relevant herein, was Commissioner of Public Works of the Town of Oyster Bay, Long Island. As such, the defendant Gerard P. Trotta, was 'authorized and empowered, subject to the prior approval of the Town Board . . . to retain and employ private engineers, architects and consultants, or firms practicing such profession, for the purposes of (1) preparing designs, plans and estimates of structures or projects of any type and character; (2) rendering assistance and advice in connection with any project, whether defined or proposed and under the supervision of the department of public works; and (3) performing such other and necessary services as the commissioner may deem necessary in the administration of the department.' (Town of Oyster Bay Local Law # 2–1966). Moreover, at all times relevant herein, contracts which were entered into by the Commissioner of Public Works of the Town of Oyster Bay on the Town's behalf, including contracts with William F. Cosulich Associates, generally designated the Commissioner of Public Works as the

representative of the Town of Oyster Bay, who was vested with complete authority to monitor and oversee the performance of the contractor.

3. Accordingly, the defendant, Gerard P. Trotta, had and was reasonably understood by William F. Cosulich Associates, and its members, to have the power to take action which could adversely affect William F. Cosulich Associates in obtaining and performing contracts with the Town of Oyster Bay, Long Island.

COUNT ONE

1. On or about the 25th day of February, 1972, within the Eastern District of New York, the defendant Gerard P. Trotta did unlawfully attempt to affect commerce and did unlawfully affect commerce as that term is defined in Section 1951(b)(3) of Title 18, United States Code, by knowingly and wilfully demanding and obtaining from William F. Cosulich Associates the sum of Two Thousand Dollars ($2,000.00) for the benefit of the Republican Committee of the Town of Oyster Bay, Long Island, with the consent of William F. Cosulich Associates, and its members, to the aforesaid payment having been induced by the defendant Gerard P. Trotta under color of official right.

\* \* \* \* \* \* "

Count One further alleges that the defendant thereby affected interstate commerce.

Count Two follows the allegations of Count One in charging the same offense but with respect to a different instance in which payment was demanded and made of the additional sum of $1,000.

counts, in political contributions to the local Republican Committee from the engineering firm of William F. Cosulich Associates (Cosulich) "under color of official right."[2] These charges were prefaced with allegations that, throughout the period of time covered by the indictment, Cosulich was providing engineering services to Oyster Bay, among other municipal corporations; and that Trotta, as Commissioner of Public Works, exercised the functions of making contracts with engineering firms on behalf of the Town and supervising their performance under the contracts. It also alleged that Cosulich, which consented to these payments, reasonably understood that Trotta "[had] the power to take action which could adversely affect [the firm] in obtaining and performing contracts with the Town of Oyster Bay."

The appellee moved in the district court to dismiss the indictment on the ground that it failed to allege with sufficient specificity all of the necessary facts comprising the offense charged. The court granted the motion, and the Government has appealed. We reverse.

To a great extent the parties' arguments are directed to the substantive interpretation of the crime in question. The Government claims, in effect, that the Hobbs Act is violated when a public official with criminal intent demands and obtains, under color of official right, payment of money by someone who does not owe the money to the official or his office, but who is so situated that he can be adversely and directly affected by the manner in which the public official exercises his powers. It asserts that the indictment in this case charging Trotta's violation of the Act is adequate. The appellee, Trotta, argues, however, that the indictment is deficient because it does not specifically allege and describe an "identifiable misuse of office" by Trotta, that is to say, it does not explicitly describe what Trotta agreed to do in his official capacity in return for the payment of money—in short, the *quid pro quo.*

■ Based largely on this claim by the defendant-appellee, the trial court held[3] that the words "under color of official right" are too vague and general to meet the requirements of the Fifth and Sixth Amendments to the United States Constitution and the Federal Rules of Criminal Procedure.[4] The Supreme Court cases on the subject, however, "indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). The first criterion

---

**2.** The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The offense charged here is one under "color of official right" and not through the use of force, violence or fear. That the direct benefit of the money paid went to the Republican Committee rather than to Trotta does not lessen Trotta's culpability under the statute. ". . . [E]xtortion as defined in the statute in no way depends upon having a direct benefit conferred on the person who obtains the property." *United States v. Green,* 350 U.S. 415, 420, 76 S.Ct. 522, 526, 100 L.Ed. 494 (1956).

**3.** In the course of its argument the Government made frequent reference to a summary

of an "offer of proof" made in connection with a pre-trial conference; and the defendant-appellee discussed at some length the prosecution of other public officials of the Oyster Bay area and the disposition made of those cases. This appeal is from a judgment of the district court declaring the indictment in this case against Trotta insufficient on its face. This court has no interest in these discussions of extraneous matters, and they have been disregarded.

**4.** F.R.Crim.P. 7(c)(1) provides, in part: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

serves at least two constitutional goals: the Sixth Amendment right of the accused "to be informed of the nature and cause of the accusation"; and the Fifth Amendment right to be tried only on the charge of a grand jury, as distinguished from and unmodified by any interpolations of the prosecution. *Russell v. United States*, 369 U.S. 749, 760–61, 766, 770–71, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Following these criteria, this Circuit has "consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms." *United States v. Salazar*, 485 F.2d 1272, 1277 (2 Cir. 1973), *cert. denied* 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974). See also *United States v. Cohen*, 518 F.2d 727 at 732 (2 Cir. 1975); *United States v. Tramunti*, 513 F.2d 1087 at 1109 (2 Cir. March 7, 1975); *United States v. Sperling*, 506 F.2d 1323, 1344 (2 Cir. 1974), *cert. denied* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Fortunato*, 402 F.2d 79, 81 (2 Cir. 1968), *cert. denied* 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969); *United States v. Palmiotti*, 254 F.2d 491, 495 (2 Cir. 1958).

 Here the pertinent portions of the statute are "tracked" in the indictment[5] and in addition the dates, approximate location, and amounts of the alleged extorted payments, together with the identity of the payor, are alleged in specific terms. It is true that merely repeating the words of the statute which defines an offense will not make the in-dictment sufficient if the statutory language fails to apprise the defendant, "with reasonable certainty, of the nature of the accusation against him." *Russell, supra*, 369 U.S. at 765, 82 S.Ct. at 1047, citing *United States v. Simmons*, 96 U.S. 360, 362, 24 L.Ed. 819. But we are of the opinion that the phrase "under color of official right" as used in § 1951 has an historically recognized and accepted meaning[6] which, taken together with the rest of the indictment, makes it clear that Trotta is charged with using the power of his office over Town engineering contracts to induce payments of money from Cosulich which Trotta had no right to receive.

In *Palmiotti, supra*, the defendant asserted a very similar challenge to his indictment for extortion under the "force, violence, or fear" portion of § 1951. The indictment charged that, on or about a particular date, he obtained from a named company a specified sum of money, "with [the payor's] consent induced by wrongful use of threatened force and fear." 254 F.2d at 495. The defendant argued that "while the allegations of the indictment follow the language of 18 U.S.C. § 1951, the vital thrust of the indictment lies in the particular kind of 'wrongful use of actual or threatened force, violence, or fear' relied upon, and that the omission to state this in specific rather than general terms is in effect the omission of the 'essence' of the charge and a fatal defect." *Id.* Applying the two criteria for sufficiency, discussed *supra*, the court rejected this

---

5. The appellee disputes this, contending that the term "wrongful use" in § 1951(b)(2) must be read as applying to "under color of official right" as well as to "actual or threatened force, violence, or fear." While a defendant's use of his office must indeed be wrongful in order to constitute extortion under the first portion of the statutory definition, this element is implicit in the concept of "under color of official right," and the allegation that Trotta acted "knowingly and wilfully" charges him with doing so with criminal intent. The language of § 1951(b)(2) cannot be grammatically read in such a way as to require an explicit allegation of "wrongful use" in order to track the statute.

6. See, *infra*, quotation from *United States v. Braasch*, 505 F.2d 139, 151 (7 Cir. 1974). The phrase "under color of official right," like the definition of the word "obscene" in *Hamling v. United States*, 418 U.S. 87, 118, 94 S.Ct. 2887, 2908, 41 L.Ed.2d 590 (1974), "is not a question of fact, but one of law . . . [and] is . . . a legal term of art." Also equally applicable to the definition of the phrase "under color of official right" is what the Court went on to say about the definition of "obscenity": "The legal definition of obscenity does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him."

argument. In *Fortunato, supra,* the court upheld an indictment which charged the defendant with "wilfully misapplying" bank funds. Contrary to the defendant's contention that this phrase standing alone was impermissibly vague, the court held that the grand jury was not required to specify more precisely the unlawful means used or the nature of the defendant's alleged abuse of his authority at the bank.

As the appellee and the district court recognized, extortion "under color of official right" as prohibited by the Hobbs Act is basically equivalent to the common law crime of (official) extortion,[7] and as such its meaning, as a legal term of art, is well-defined. "At common law a public official who under color of office obtained the property of another not due either to the office or the official was guilty of extortion." *United States v. Nardello,* 393 U.S. 286, 289, 89 S.Ct. 534, 536, 21 L.Ed.2d 487 (1969). This Circuit long ago "adopted the classic definition of Blackstone"[8] in construing the crime of extortion by federal officers established by the predecessor to 18 U.S.C. § 872.[9] *Martin v. United States,* 278 F. 913, 917 (2 Cir. 1922). The Seventh Circuit has recently described the offense of extortion under color of official right in the following terms:

> "The use of office to obtain payments is the crux of the statutory requirement of 'under color of official right', and appellants' wrongful use of official power was obviously the basis for this extortion. . . . It matters not whether the public official induced payments to perform his duties or not

to perform his duties, or even, as here, to perform or not to perform acts unrelated to his duties which can only be undertaken because of his official position. So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951." *United States v. Braasch,* 505 F.2d 139, 151 (7 Cir. 1974), *cert. denied* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975).

■ We conclude that there is no merit in any of the claims made by the appellee. One of the principal assertions is that the indictment is defective because of its failure to allege "a specifically identifiable misuse of office," in which Trotta engaged, as an unlawful *quid pro quo* or a consideration in the nature of official action running from Trotta to Cosulich in return for the payment of the money not lawfully owed. This, it appears, might be an exercise of the powers of his office in his line of duty or a forbearance to carry out a duty. Such a *quid pro quo* may, of course, be forthcoming in an extortion case, or it may not. In either event it is not an essential element of the crime.

■ But the pressure exerted by Trotta by means of the power of his public office to induce the payment of the money is, in itself, the misuse of the office; and, as stated in *Braasch, supra,* it does not matter whether Trotta "induces payments to perform his duties or not to perform his duties." Nor does it matter that the payments may have been induced simply by assertion of power or pressure stemming from Trotta's

---

7. "The 'under color of official right' . . . part of the definition repeats the common law definition of extortion, a crime which could only be committed by a public official, and which did not require proof of threat, fear, or duress." *United States v. Kenny,* 462 F.2d 1205, 1229 (3 Cir.), cert. denied 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972). See also *United States v. Mazzei,* 521 F.2d 639 (3 Cir. 1975). *United States v. Crowley,* 504 F.2d 992, 995 (7 Cir. 1974); *United States v. Nedley,* 255 F.2d 350, 355 (3 Cir. 1958). Cf. *Martin v. United States,* 278 F. 913, 917 (2 Cir. 1922).

8. Blackstone defined extortion as:
> "an abuse of public justice, which consists in any officer's unlawfully taking, by colour of his office, from any man, any money or thing of value, that is not due to him, or more than is due, or before it is due." 4 W. Blackstone, Commentaries 141 (1769).

9. "Whoever, being an officer, or employee of the United States . . . under color or pretense of office or employment commits or attempts an act of extortion, shall be fined not more than $5,000 or imprisoned not more than three years, or both . . . ."

position as a public official. *United States v. Price*, 507 F.2d 1349 (4 Cir. 1974). To repeat, it is the use of the power of the public office itself to procure the payments of money not owed to the public official or his office that constitutes the offense. This was adequately alleged; and we, therefore, hold that the indictment is sufficient on its face.

The judgment of the district court is reversed and the case is remanded for trial.