UNITED STATES of America,
Plaintiff-Appellee,

v.

Carl SCACCHETTI, Defendant-Appellant.

No. 62, Docket 81–1155.

United States Court of Appeals,
Second Circuit.

Argued Sept. 3, 1981.

Decided Jan. 4, 1982.

Norman A. Palmiere, Rochester, N. Y., for defendant-appellant.

David Rothenberg, Asst. U. S. Atty., Rochester, N. Y. (Roger P. Williams, U. S. Atty., W. D. N. Y., Buffalo, N. Y., on the brief), for plaintiff-appellee.

Before NEWMAN and KEARSE, Circuit Judges, and EGINTON,* District Judge.

EGINTON, District Judge:

The defendant, Carl Scacchetti, appeals from a judgment of conviction on two counts of a three count indictment entered after trial in the United States District Court for the Western District of New York before a jury and Judge Harold P. Burke. The defendant was convicted on Count II for affecting commerce by extortion under color of official right in violation of 18 U.S.C. § 1951 and on Count III for attempting to affect commerce by extortion under color of official right in violation of the same statute, popularly known as the Hobbs Act. The defendant received concurrent prison terms on each count of one year and a day.

The defendant is an attorney who was elected Judge of the City Court of Rochester, New York in 1972. Jurisdiction of that court comprised both civil and criminal matters, the latter being limited to misdemeanor jury trials, although the defendant con-ducted arraignments and bail proceedings for criminal defendants charged with both misdemeanors and felonies.

At some point between 1976 and 1978 the defendant became friendly with one Albert Tantalo, a Rochester businessman who owned various automobile and tire operations in the area. Tantalo purchased a large volume of tires of many brands from locations outside of New York State. Tantalo sold some of his tires through a mail order operation to customers, some of whom lived outside the State of New York, and he advertised in national magazines to generate sales.

Another aspect of Tantalo's business involved the purchase of wrecked cars from State Farm Insurance Company. Some of the cars so purchased would come in from outside New York State. He sold used parts salvaged from the wrecked cars to organizations outside the State of New York.

The evidence presented to the jury on Count II essentially was that Albert Tantalo employed a young man named Christopher Alberti. In the spring of 1979 Alberti's license to drive in New York State was revoked. He continued to drive and was stopped and arrested for speeding and for driving with a license under suspension. His case was pending before the defendant in City Court. Alberti advised Tantalo of the situation, and Tantalo contacted the defendant, who said that he would see if he could help Alberti. There were several adjournments in the matter, ostensibly at the requests of Alberti's lawyer, although in fact Alberti had no lawyer. Finally the defendant dictated a disposition for the records of the City Court as follows:

"On motion of Judge Willis, the care of Christoford [sic] Alberti, the speeding charge is withdrawn and dismissed and the driving while license suspended is produced and withdrawn." (Gov't. App. 149)

---

* The Honorable Warren W. Eginton of the United States District Court for the District of Connecticut, sitting by designation.

While these events were taking place between May and July of 1979, a concurrent scenario unfolded. The defendant visited Tantalo at one of his places of business and informed him that he had a friend with an automobile that required repair. The defendant told Tantalo that he could help Alberti in his license suspension case, but that he wanted Tantalo to take care of fixing his friend's car. Tantalo had the car repaired for the defendant's friend, who was never billed for the repair work. Tantalo testified that Alberti paid for the repairs.

The evidence presented to the jury on Count III (the attempt) was to the effect that in the fall of 1979 Tantalo was indicted on conspiracy to distribute and possession with intent to distribute cocaine. After his arrest, he began cooperating with law enforcement authorities. In the course of that cooperation, Tantalo told the authorities about the Alberti incident involving the defendant. At the request of law enforcement agents, Tantalo placed telephone calls to the defendant in the presence of an FBI agent. These conversations were recorded and the tape recordings were presented to the jury. During the course of the conversations, Tantalo requested the defendant to do whatever he could in behalf of one Wesley Hutchinson, scheduled to appear in City Court before the defendant on an assortment of charges. While discussions continued between the defendant and Tantalo about Hutchinson, the defendant at one point mentioned that he wanted Tantalo to do him a favor and that the favor was that Tantalo procure a 35mm camera for the defendant. Law enforcement agents working with Tantalo procured a 35mm camera and a claim ticket for a motor drive attachment, which was not immediately available. The government offered no direct evidence that the defendant had in fact ever done anything in the Hutchinson case, as Tantalo had requested. The government introduced evidence that the defendant did receive the camera, although the evidence was inconclusive about the motor drive. Thereafter, a grand jury returned an indictment against the defendant charging him with violating the Hobbs Act by extortion and by attempting to extort under color of official right. Count II essentially involved the free car repairs that defendant had demanded in exchange for dismissing the Alberti charges. Count III concerned the camera which the defendant had demanded from Tantalo.

Although the defendant has raised nine separate points on appeal, the only issues that appear significant for extended review concern the adequacy of the Hobbs Act charge given to the jury.

■ Before turning to those central issues, we first dispose of those claims which require only brief discussion. The defendant raises a jurisdictional challenge based upon the alleged insufficiency of evidence presented to the grand jury as to the interstate nature of Tantalo's businesses. The defendant concedes that *Costello v. United States*, 350 U.S. 359 (1956) forecloses any argument as to the competency of hearsay evidence to support a grand jury indictment, but nonetheless challenges the adequacy of that evidence to satisfy the jurisdictional requirement of effect upon interstate commerce. Even if sufficiency of evidence before the grand jury on a jurisdictional element can be challenged, *see United States v. Costello, supra*, 350 U.S. at 363 (indictment valid on its face suffices to call for trial on the merits), the grand jury in this instance heard sufficient evidence concerning interstate aspects of Tantalo's business. The trial court's denial of defendant's motion to dismiss the indictment in the instant case was correct.

■ Defendant next claims that the trial court erred in failing to dismiss the indictment on grounds that the evidence offered at the trial constituted a material variance to the allegations set forth in the indictment. This claim is based on the wording of the indictment that alleged that Tantalo was engaged in interstate commerce, whereas the proof at trial showed that corporations in which Tantalo was involved were engaged in interstate commerce rather than the extortion victim himself. De-

fendant relies on *Berger v. United States,* 295 U.S. 78 (1935), for the proposition that an accused must be definitely informed as to the charges against him so that he can prepare and present his defense and not be taken by surprise by the evidence offered at trial. However, in this case there was hardly any surprise to the defendant in view of the extensive testimony showing his awareness of Tantalo's relationship to the corporations. In fact, the defendant's interest in Tantalo seems to have been directly caused by his knowledge of the nature of Tantalo's corporate operations. As this court has recently noted, "convictions are not now set aside except for variance resulting in substantial prejudice to the defendant." *United States v. Knuckles,* 581 F.2d 305, 312 (2d Cir. 1978). No such prejudice exists in this instance.

■ Defendant next argues that the government failed to prove a prima facie case for the jury that the defendant committed that extortion affecting interstate commerce as contemplated under the provisions of the Hobbs Act. The parties agree, citing *Stirone v. United States,* 361 U.S. 212, 218 (1960), that there are two essential elements to a Hobbs Act offense: (1) interference with interstate commerce and (2) extortion, alleged in this case to be under color of official right. The parties rely on the same decisions of this court to support their respective contentions as to each of these essential elements of the offense. On the interference with commerce point, the decision of this court in *United States v. Augello,* 451 F.2d 1167, 1169–70 (2d Cir. 1971) *cert. denied* 405 U.S. 1070 (1972), is dispositive. The government correctly notes that *Augello* held that the extortion falls within the purview of the Act even if its effect on commerce is "merely potential or subtle." There is no question but that the use of the Hobbs Act in the type of case here presented does take the statute to its outer limits, but such has consistently been the interpretation of the courts in virtually all of the circuits. The Congressional intent has consistently been found to be far-reaching, and no more than a minimal effect on interstate commerce is required. That min-

imum has been demonstrated in this situation.

■ The second element is extortion under color of official right. The scope of that element has been set forth in *United States v. Trotta,* 525 F.2d 1096 (2d Cir. 1975), in which this court, *contra* to the interpretation of the defendant, expressly noted that a common law definition of extortion applies; that is, "a crime which could only be committed by a public official, and which did not require proof of threat, fear, or duress." (525 F.2d at 1100 n.7). The essential in the statute is the use of the office through acts unrelated to the duties of the public official but which could only be undertaken because of his official position. So long as the motivation for the payment focuses on the office of the recipient, the conduct falls within the ambit of the Hobbs Act. The government's proof was in this instance sufficient to demonstrate that the defendant made his demands in connection with the misuse of the authority of his public office.

■ The final claim made by the defendant, other than his numerous exceptions to the judge's charge, concerns the status of Tantalo as a "middleman" between the defendant public official and the victim of the extortion. The defendant claims that the extortion victims were Alberti in the Second Count and either Hutchinson or his fictitious employer in the Third Count. Defendant claims that since neither Hutchinson nor Alberti were involved in interstate commerce, the proof was fatally deficient jurisdictionally under the Hobbs Act, and the indictment should have been dismissed. The short answer to defendant's contentions is that the government never claimed extortion from Alberti, but always extortion from Tantalo. The government claimed on Count II and the jury apparently found, that the defendant extorted free car repairs from Tantalo for a friend of the defendant. The proof on Count III is equally clear that the defendant demanded the camera from Tantalo, not from Hutchinson, and intended at all times to obtain

the camera from Tantalo. There is no merit in this claim of the defendant.

■ The main thrust of the defendant's challenges on appeal is directed to the charge given by the trial judge, and his refusal to adhere to some aspects of the requests to charge submitted by the defendant. Even most of these claims are without sufficient merit to require any extensive discussion by this court. For example, the defendant claims that the trial court gave a charge that favored the government to an extent tantamount to directing a verdict for the government. While it is true that the judge at first did provide a summary emphasizing elements of the government's evidence and discussing the defense case only briefly, nevertheless when this was called to the attention of the court, the jury was recalled and the court noted that it had inadvertently neglected to summarize all of the defense testimony, and thereupon proceeded to do so. We have reviewed the record and find that on balance, and considered in its entirety, the charge was fair and unbiased. The district judge warned the jury of its obligation to consider "all the evidence in the case." (Defendant's App. A–108).

■ Another unpersuasive claim of the defendant is that the trial judge erred in refusing to incorporate request to charge No. 7 into the jury instructions[1]. The judge actually charged, however, that in order to convict the defendant, the jury had to find that Tantalo was the victim of the extortion. There were repeated instructions that the defendant must have received something of value from Tantalo. It was not necessary for the court to charge in the negative manner as an alternative, as requested by the defendant.

■ A final claimed error that requires only summary treatment is the defendant's claim that the judge's charge incorrectly defined "under color of official right" with respect to the definition of extortion. Defendant complains that the charge permitted the jury to convict if the jury found merely that the defendant took advantage of his position as a judge, even if there were no proof that the defendant intended to assist Tantalo. The law, however, specifically permits a conviction on the basis that defendant used his office to extort something from Tantalo, as noted *supra* in *United States v. Trotta*, 525 F.2d 1096, 1100 (2d Cir. 1975). It was not error for the district judge to deny the request of the defendant for a jury instruction that defendant must have promised some specific favor.

The defendant's challenges to the charge on the issue of intent require more considered review. The defendant claims that the court should have charged that before the defendant's use of his office be deemed criminal in violation of the Hobbs Act, it is necessary that the defendant have acted with criminal intent. The defendant notes that the only reference in the court's charge to the question of intent was a reference made with respect to Count III, and that even in that respect the intent charge was improperly limited to the intention of the defendant to commit an act forbidden by the statute, the natural consequence of which would be to obstruct, delay, or affect interstate commerce, whereas the court should have charged that the government bore the burden of proving as to Count III that the defendant intended to obstruct or affect commerce. As to the latter point, that may be disposed of by noting that the district judge in the instant case charged in accord with decisions of this court such as *United States v. Varlack*, 225 F.2d 665, 672 (2d Cir. 1955). As to the Third Count the court properly instructed the jury on the

---

1. The request to charge No. 7 reads as follows: "Under the third count of the indictment, if you find that the defendant did commit the crime of extortion, you must also find, beyond a reasonable doubt, that the victim of the extortion was Albert Tantalo who was then engaged in interstate commerce and not Wesley Hutchinson (who was the person scheduled to appear before the defendant and whose name was supplied to Tantalo by government officials) or the latter's (Hutchinson's) fictitious boss or employer. If you have a reasonable doubt as to whether the victim of the extortion was Albert Tantalo as opposed to Wesley Hutchinson or his employer, then you must acquit the defendant." (Defendant's App. A–55).

intent issue when it gave its charge as follows:

"It is not necessary for the government to show that the defendant intended to specifically obstruct, delay or affect interstate commerce. All that is necessary as to this issue is that the government's evidence prove that the defendant intended to commit an act forbidden by the statute, the natural consequences of which would be to obstruct, delay or affect interstate commerce." (Defendant's App. A–98–9).

 Unfortunately, the court did not charge so definitively as to the element of intent earlier in the charge in that portion dealing with the first two counts. There is no question but that the trial court would have been well advised to include specific language as to the requirement of intent when it dealt with the elements of a Hobbs Act offense at the outset of the charge. It did not do so. Nevertheless, as the government contends, the propriety of a trial court's charge should be reviewed in the light of an examination of the charge as a whole. *Henderson v. Kibbe*, 431 U.S. 145, 152–53 n.10 (1977). *See United States v. Aulet*, 618 F.2d 182, 190 (2d Cir. 1980). First, it is important to keep in mind that the district judge, at the outset of his charge, cautioned the jury as follows: "You are not to single out one instruction alone as stating the law but must consider the instructions as a whole." (Defendant's App. A–89). The court then instructed the jury as to the definition of extortion under color of official right as meaning that a public official "unlawfully" obtains property of another without any right to do so and that a public official's "wrongful use of official power" is the basis for extortion under color of official right. The trial court did not stop there, however, and immediately added a passage that succinctly illustrates the court's meaning as to the wrongful element, which would perforce include an element of intent. The court charged as follows:

"If you find beyond a reasonable doubt that the evidence has established that the defendant used the power and authority invested in him by reason of his public office to obtain money or property or services from the individuals named in the indictment, and that this money or property or services was not due or owing to the defendant nor to his office, that is sufficient to establish that the money or property or services was obtained by extortion under color of official right." (Defendant's App. A–94).

Use of power "to obtain money" clearly refers to the purpose of the defendant, and, in the context of the entire charge, this passage adequately instructed the jury to consider the defendant's state of mind.

At the close of its charge, after setting forth the elements of intent applicable to the Third Count, as noted above, the court then added the following general instruction on intent:

"Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of a person's mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statements made or done or omitted by the defendant and all other facts and circumstances in evidence which indicate his state of mind." (Defendant's App. A–100).

Those quoted portions of the charge adequately amplify the trial judge's earlier discussion of the wrongful purpose required to be entertained by the defendant.

In conclusion, this court finds that the challenges raised by the defendant on appeal, although thorough and imaginative, do not present a sufficient basis for this court to reverse the conviction of the defendant under Counts II and III of the indictment. The judgment of conviction is affirmed.