**UNITED STATES of America**

v.

**Lloyd Wayne RAY.**

**Crim. A. No. 87–41–A.**

United States District Court,
M.D. Louisiana.

June 23, 1988.

P. Raymond Lamonica, U.S. Atty., M.D.L., Richard B. Launey, Ian F. Hipwell, Asst. U.S. Attys., Baton Rouge, La., for plaintiff.

Camille F. Gravel, Jr., Alexandria, La., Michael S. Fawer, New Orleans, La., for defendant.

## RULING ON MOTIONS

JOHN V. PARKER, Chief Judge.

This matter is before the court upon two motions to dismiss Counts II and IV of the indictment and portions of Counts I and III along with defendant's motion to sever Counts V, VI, VII and VIII because of prejudicial joinder. After careful consideration, the court concludes that all three motions must be denied.

The first four counts of the indictment charge the defendant with violations of the Hobbs Act, 18 U.S.C. § 1951 and 18 U.S.C. § 2, while the last four counts charge violations of 26 U.S.C. § 7206(2), aiding and assisting in the preparation of false and fraudulent documents to the Internal Revenue Service.

The first four counts of the indictment essentially charge Ray with violating the Hobbs Act, 18 U.S.C. § 1951, by willfully obstructing and affecting commerce by extorting payments from certain named individuals and companies in the procurement of state contracts with the Louisiana Department of Health and Human Resources, the Department of Transportation and Development, and the Department of Agriculture and Forestry. It is alleged that Ray "held himself out as, acted as and was an aide and assistant to Governor Edwards" by performing actions routinely associated with that office or position. Ray allegedly received compensation from the State of Louisiana which included an office, secretarial services and living quarters at the governor's mansion.

It is further alleged that payments were made to Ray with an understanding that Ray would use his position as an aide and assistant to the Governor to further the respective payor's interests. It is alleged that the payments were not due Ray or his office and position and that the consent to pay was induced under "color of official right."

Counts I, II, III and IV of the indictment allege that Ray was "an aide or assistant to the Governor" who "performed the functions of that office and position," and that Ray "did obstruct, delay and affect commerce, and caused others to obstruct, delay, and affect commerce, and attempted to do so, by extortion" as defined in Title 18, United States Code, Section 1951. Counts I and III allege that the consent of the victims "was induced under color of official right and by the wrongful use of fear of economic harm." Counts II and IV allege only that consent was induced "under color of official right."

The indictment charges violations of 18 U.S.C. § 2 as well as 18 U.S.C. § 1951 in each of the first four counts.

Defendant's Original Motion to Dismiss

Both motions to dismiss seek dismissal of Counts II and IV and the parts of Count I and III which are based upon extortion "under color of official right." In his brief, Ray expressly concedes for purposes of the

motion to dismiss that he "performed the role ascribed to him in the indictment," i.e. "held himself out as, acted as and was an aide and assistant" to the Governor. The basis for the original motion is that such a position is not a "public office" and therefore cannot support a conviction for extortion based upon "color of official right."

■ The Hobbs Act is a very broad federal statute. The offense is complete if interstate commerce is obstructed, delayed or affected by robbery or extortion or threats of physical violence; "extortion" includes the obtaining of property from another, with his consent, "induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." This definition permits a conviction on a finding that either "color of official right" or force or duress was used. *United States v. Williams*, 621 F.2d 123 (5th Cir.1980), cert. denied, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981).

■ It has been repeatedly held that "under color of official right" is a term of art which comes from the common law crime of extortion. *United States v. Dozier*, 672 F.2d 531 (5th Cir.1982), cert. denied, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982); *Williams*, supra. Under common law, extortion is committed when a public officer, under color of office, corruptly obtains a fee to which he is not entitled. IV C. Torcia, *Wharton's Criminal Law* § 695 (14th ed. 1981). "The misuse of public office is said to supply the element of coercion." *United States v. Hathaway*, 534 F.2d 386, 393 (1st Cir.1976), cert. denied, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). No proof of threat, force or duress is required since the coercive element is supplied by the existence of the public office itself. *Williams*, supra. "Threats, fear and duress became express elements only when the crime was later broadened to include actions by private individuals, who had no official power to wield over their victims." *Hathaway*, supra.

At this point in our analysis, it might seem that Ray's motion has merit since the alleged position as an "aide and assistant"

to the Governor does not appear to be a "public office" in the strictest sense that the term has been used. Black's Law Dictionary indicates that not all persons in public employment are "public officials" and that the "essential characteristics" of "public office" are "(1) authority conferred by law, (2) fixed tenure of office, and (3) power to exercise some portion of sovereign functions of government." Black's Law Dictionary 1107 (5th ed. 1979). Defendant specifically relies upon the definition of "public office" under Title 42 ("Public Officers and Employees") of the Louisiana Revised Statutes, LSA–R.S. 42:1, which defines "public office" as "any state ... office, elective or appointive ... when the office or position is established by the constitution or laws of this state." [1]

In response, the Government fails to cite any constitutional or statutory authority expressly authorizing the appointment of aides or assistants to the Governor or establishing their powers.[2] However, the Government does persuasively argue that jurisprudence under the Hobbs Act has not limited "under official right" extortion to defendants holding elective or appointive offices created through specific legislation.

Typical Hobbs Act "under color of official right" extortion cases involve state or local commissioners, law enforcement officers, building inspectors, school board members and city council members or alderman. See Annotation, "When is Act of Extortion Performed 'Under Color of Official Right' so as to be in Violation of Hobbs Act (18 U.S.C. § 1951)," 74 ALR Fed. 199 (1985). For example, in *Williams*, supra, the Fifth Circuit upheld the conviction of an elected member of the Jefferson Parish School Board upon proof that property was unlawfully obtained under color of official right.

For the most part, the "under official right" theory of extortion cases assume that the defendant was a public official without any inquiry into whether or not he was elected or appointed or had expressly been given sovereign powers under law. For example, the Fifth Circuit upheld a Hobbs Act conviction of an Assistant City Attorney for Monroe, Louisiana, under a "color of official right" extortion theory, upon the apparent assumption that he was a "public officer." *United States v. Wright*, 797 F.2d 245 (5th Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987).

In fact in some cases, the defendants appear to be no more than state or local employees who have been given some sovereign powers although neither elected or appointed. See *United States v. Price*, 617 F.2d 455 (7th Cir.1979) (involving an inspector for the Chicago Bureau of Electrical Inspection); *United States v. Cerilli*, 603 F.2d 415 (3d Cir.1979), cert. denied, 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980) (involving "employees" of the Pennsylvania Department of Transportation, occupying the positions of Superintendent and Assistant Superintendents) and *United States v. Reilly*, 456 F.Supp. 211 (E.D.Pa. 1978), affirmed (without opinion) 601 F.2d 577, cert. denied, 444 U.S. 903, 100 S.Ct. 216, 62 L.Ed.2d 140 (1979) (finding sufficient evidence to support a jury finding that the Director of Facilities at West Chester College in Pennsylvania was acting "under color of official right").

■ On its face, the Hobbs Act does not limit official right extortion to "public officers" but would appear to apply to anyone acting "under color of official right." See *United States v. Phillips*, 586 F.Supp. 1118, 1120–21 (N.D.Ill.1984). The jurisprudence has repeatedly noted that the Congress, in enacting the Hobbs Act, clearly conveyed its intended purposes to "make criminal all conduct within the reach of the statutory language." *United States v. Culbert*, 435 U.S. 371, 98 S.Ct. 1112, 1117,

---

**1.** The court notes that there are other statutory definitions of "public officer" in the Louisiana Revised Statutes, including LSA–R.S. 14:2 which equates "public officers" with "public employees" for the purposes of the Louisiana Criminal Code.

**2.** Compare LSA–R.S. 49:203 (establishing position of executive counsel to governor) and R.S. 49:204 (establishing position of "Secretary to the Governor").

55 L.Ed.2d 349 (1978); *Williams*, supra at p. 125, *Phillips*, supra. Consequently, the Act itself appears to reach anyone who *in fact* exercises official rights or functions, regardless of whether those powers were conferred by reason of his being elected or appointed to an office provided for by state law or conferred in some other manner.

Using similar logic, a Hobbs Act conviction of a state senator based upon official right extortion was upheld despite the fact that the state senator did not have the actual "de jure" power used to induce the victim to make payments but exploited a reasonable belief that he in fact had such official power. *United States v. Mazzei*, 521 F.2d 639 (3d Cir.1975), cert. denied, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975). See *United States v. Freedman*, 562 F.Supp. 1378, 1384 (N.D.Ill.1983) (discussing official right extortion convictions where public officials have promised favors beyond their legal rights or capacity to perform). By focusing on the reasonableness of the victim's belief, these cases indicate that technical arguments relating to the statutory source of the defendant's official power must fail.

■ For these reasons, the court does not accept Ray's contention that his alleged position must be an elected or appointed office specifically established by state law in order to constitute extortion "under color of official right" under the Hobbs Act. The issue of whether aides and assistants to the Governor have official powers and functions has not been squarely raised by defendant's motion. The allegations in the indictment, read as a whole, indicate that Ray possessed and misused sovereign or official powers in connection with his alleged position as aide or assistant to the Governor, or that he at least caused others to believe that he possessed such authority. This is sufficient to charge official right extortion under the Hobbs Act.

■ The more interesting question may be whether someone acting as or holding himself out as an aide or assistant to the Governor falls within the scope of the Hobbs Act. Ray has not pursued this argument, perhaps recognizing that there is some authority at common law for finding such conduct constitutes extortion under color of official right. According to Wharton's, a person who is acting as an officer and holding himself out as such, is estopped to deny the regularity of his appointment. IV C. Torcia, *Wharton's Criminal Law* § 695 (14th ed. 1981). See also, 31 Am.Jur.2d "Extortion, Blackmail, etc." § 3 (1967).

It has been said that persons occupying quasi official positions may be guilty of extortion by color of office under common law. Id. See also, *Commonwealth v. Saulsbury*, 152 Pa. 554, 25 A. 610 (1893). Generally, any person clothed with official privileges and duties may commit the crime of extortion under color of office. 31 Am. Jur.2d "Extortion, Blackmail, etc." § 3 (1967). See *United States v. Gonzales*, 620 F.Supp. 1143, 1147 (N.D.Ill.1985) (noting that the concept of official right might extend to persons clothed with some indicia of governmental power, such as guardians ad litem).

The allegations against Ray clearly support a conclusion that he was clothed with official privileges and benefits as were other aides to the Governor, including an office and secretarial services. Therefore, Ray's alleged conduct in acting or holding himself out as an aide or assistant falls within the scope of the Hobbs Act. We must simply await the evidence which the Government will present on this issue.

It shall be noted that the indictment alleges that Ray was a public official who used his office to extort money and property; it also alleges that Ray "caused others" to "obstruct ... commerce ... by extortion." That allegation alleges a Hobbs Act violation, see *United States v. Margiotta*, 688 F.2d 108 (2d Cir.1982), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983), even if Ray did not hold a public office. Counts I and III allege in addition that consent was induced by fear of economic harm, which is unrelated to Ray's status as a public official. The Government, of course, is entitled to allege alternative violations of the statute and rely upon the evidence produced at trial.

Accordingly, the original motion to dismiss is hereby DENIED.

### Ray's Second Motion to Dismiss Counts II and IV and Portions of Counts I and III

Ray's second motion to dismiss raises the issue of whether the indictment must allege with specificity the "official acts" that were used to induce or motivate the payments that Ray allegedly wrongfully received while acting as an aide or assistant to the Governor. Defendant contends that the indictment is insufficient since "[a]ll that is alleged is that monies were paid Ray 'to further the interests' of the payors, nothing more." In other words, defendant contends that the indictment must allege a "specifically identifiable" misuse of office.

In opposition to the motion, the Government argues that the indictment is sufficient because it adequately apprises defendant of the charges against him. The Government points to the fact that each charge alleges that Ray agreed "to use his position as an aide and assistant to the Governor to further their [the payors] interests." The Government argues that the payors bought the services of an aide and assistant to the Governor and that the proof at trial will be of specific services in some instances, while in other instances it will take the form of a more generalized use of his position to protect and further the payor's interests. The Government contends that Ray "did the kinds of things" that other aides and assistants did and "caused other government officials to do things which aides and assistants ... often caused governmental officials to do" and that the payors paid Ray in order to receive the "kind of special attention regarding governmental actions and functions that aides ... perform and can cause." The Government argues that a specific quid pro quo is not a necessary element of a Hobbs Act violation under color of official right.

In general, an indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant "what charge he must be prepared to meet" and enables him to bar future prosecutions for the same offense. *United States v. Gordon*, 780 F.2d 1165 (5th Cir. 1986). It has been said that the test for validity "is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." Id. at 1169. An indictment setting forth the offense in the words of the statute itself is generally sufficient as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense. However, if the statute defines the offense in generic terms, the indictment "must descend to particulars." *United States v. Beebe*, 792 F.2d 1363 (5th Cir. 1986). The validity of the indictment is to be determined by a practical, rather than technical, reading of the indictment as a whole. *Id.* at 1366.

The leading case on this issue appears to be *United States v. Trotta*, 525 F.2d 1096 (2d Cir.1975), cert. denied, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). In that case, it was argued that the indictment was defective because it did not allege "a specifically identifiable misuse of "public office" in which Trotta engaged "as an unlawful quid pro quo or a consideration in the nature of official action ... in return for the payment of money not lawfully owed." The Second Circuit found the indictment was sufficient because it adequately alleged the use of the power of public office to procure the payments.[3] The court stated that "a quid pro quo" "may be forthcoming in an extortion case, or it may not" and "[i]n either event it is not an essential element of the crime."

In *United States v. Dozier*, 672 F.2d 531 (5th Cir.1982), cert. denied, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982), the Fifth Circuit noted that *Trotta* had "added

---

**3.** However, the indictment in *Trotta* specifically alleged that Trotta was authorized (subject to Town approval) to retain and employ engineers and consultants as Commissioner of Public Works. It was further alleged that the payor (consulting engineers) "reasonable understood" that Trotta had the power to take action which could adversely affect the payor in obtaining and performing contracts with the Town.

the broader interpretation that the benefit exchanged for the extorted fee need not be specific," citing the language quoted above. The court stated that Trotta "who demanded money from a contractor subject to his influence without specifically identifying the benefit to be conferred, may have been operating on the margin of the law." In contrast, the indictment against Dozier alleged demands for specific amounts of money for specific favors. Consequently, the Fifth Circuit did not have to reach the issue of whether a specific official action must be alleged as a quid pro quo for the payment or benefits received by the defendant.

The Second Circuit has since reaffirmed its position that it is not necessary to charge or prove that a public officer offered a specific "quid pro quo" (in the form of some specific exercise of the powers of his office or a forbearance to carry out a duty) in exchange for the benefits wrongfully obtained as long as there is a misuse of public office. In *United States v. Margiotta*, 688 F.2d 108 (2d Cir.1982), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983), the Second Circuit states:

> Furthermore, it is not necessary to support a Hobbs Act charge by showing that a public official offer a *quid pro quo* in the form of some specific exercise of the powers of his office or a forbearance to carry out a duty; a public official may be guilty of obtaining money under color of official right if the payments are motivated as a result of his exercise of the powers of his public office and he is aware of this fact. *United States v. Trotta, supra,* 525 F.2d at 1100. While the lack of awareness on the part of the public officials may have relieved them of criminal liability for extortion under color of official right, it does not relieve Margiotta of criminal responsibility, for, pursuant to 18 U.S.C. § 2(b), he could be found guilty of having caused the public officials unknowingly to use their power of office in such a manner that would induce the payments. 688 F.2d at 133.

In *United States v. O'Grady*, 742 F.2d 682 (2d Cir.1984), the Second Circuit indicates some form of inducement by the public official is necessary. Proof of the inducement may be by proof of a request, demand or solicitation "no matter how subtle" or by proof of "quid pro quo." In reversing the conviction, the court noted that "there was very little evidence that O'Grady asked for or demanded benefits, that he offered quid pro quo in exchange for benefits, that he forestalled official action in anticipation of receiving benefits, or that he misused his public office in any way." 742 F.2d at 692.

In *United States v. Greenough*, 782 F.2d 1556 (11th Cir.1986), the Eleventh Circuit found sufficient evidence to support a Hobbs Act conviction of a member of the Board of Commissioners of the City of Mobile based upon "official right" extortion. In that case, defendant Greenough argued that there was no "quid pro quo" proven for his obtaining funds, through city employees, that had been skimmed from the operation of the city auditorium. The Eleventh Circuit referred to the employees' testimony establishing their recognition of Greenough's power over them—"I have seen what has occurred with some other employees who have not done what the Commissioner wanted done.... Some of his political enemies ... have not been treated as well as they should have been ..." and "life could have been extremely uncomfortable for all of us ... I'm sure we probably would have been terminated." The Eleventh Circuit found that if any quid pro quo was required, the testimony of the employees provided it.

■ Thus, these cases suggest that official right extortion is proven when the payor is induced by the defendant's use of the "powers of his office," whether the payor had specific or generalized knowledge of those powers. See also, *United States v. Troutman*, 814 F.2d 1428 (10th Cir.1987) (finding sufficient evidence to support a Hobbs Act conviction under either "fear of economic loss" or "official right" extortion based upon evidence that defendant could exercise "great if not exclusive influence over the Governor's decision" to award a

contract to the victim and had stressed the victim's need to "pay to play"). However, the payor's belief that the defendant could some how use his office to the payor's benefit must be a reasonable belief. See *United States v. Meyers*, 529 F.2d 1033 (7th Cir.1976), cert. denied, 429 U.S. 894, 97 S.Ct. 253, 50 L.Ed.2d 176 (1976); *United States v. Mazzei*, 521 F.2d 639 (3d Cir. 1975), cert. denied, 423 U.S. 1014, 98 S.Ct. 446, 46 L.Ed.2d 385 (1975). The details of what was promised or threatened may well bear on the reasonableness of the payor's belief. Nevertheless, the jurisprudence indicates that the specific details of the misuse of public office need not be alleged.

The essential elements of a Hobbs Act charge under color of official right are:

1. That the defendant was a public official, or held public office; and
2. That the defendant obtained property or services not due him or his office; and
3. That the property or services were given, with the consent of the payor, to the defendant, because of the power of his official position; and
4. That interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

There is no dispute about the sufficiency of the interstate commerce allegations.

Fairly read, Count I of the indictment alleges:

1. That Ray was a public official or held public office—"held himself out as, acted as, and was an aide and assistant to Governor Edwards;" and
2. That, as an aide and assistant to the Governor, Ray had the authority, or appeared to have the authority to represent "the Governor's position, attitude and views on state or governmental matters;" and
3. That John Mmahat and Robert Westerlund had interests involving the state, including leases of office space to the State Department of Health and Human Resources; and
4. That Mmahat and Westerlund, "reached an understanding to pay and paid the defendant ... approximately $8,800.00 per month ... to use his position as an aide and assistant to the Governor to further their interests."

The government declares in brief that the indictment alleges that, "the money was paid to Ray to use his position to protect and further the interests of the payors *in their relationship with state government, including obtaining and preserving business with the state.*" (brief p. 2) While the indictment might be more clear if the language quoted above had been included, the test for validity, "is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir.1986).

Here the individual fairly apprises the defendant that he is accused of selling his authority as a public official to further the interests of Mmahat and Westerlund with the State of Louisiana, including the specific leases of office space. As such, Count I need do no more.

Counts II, III and IV read the same as Count I, alleging different persons involved and different interests with the state, but each alleging that over a specific period of time Ray was paid to use his official position to further the interests of the payors with the State of Louisiana.

Each count also alleges the consent of the payors was induced because of the powers of Ray's position.

The court concludes that a specific "quid pro quo" is not an essential element of a Hobbs Act charge and that this indictment is sufficient.

Accordingly, the second motion to dismiss is hereby DENIED.

### Motion for Severance

Defendant has moved to sever Counts V, VI, VII and VIII because of prejudicial joinder. Ray claims that he will be prejudiced by the joinder of the tax count with the Hobbs Act counts. Therefore, he seeks severance of the counts under Fed.R. Crim.P. 14, which provides relief from prejudicial joinder. Ray does not contend that

the counts are improperly joined under Fed.R.Crim.P. 8(a). In his brief, Ray "concedes" that the tax returns as filed incorrectly reflected his gross income for the two calendar years in question and that the source of this unreported income is the money allegedly received in violation of the Hobbs Act. Ray argues, however, there is "little, if any, overlapping proof" between the tax and extortion charges and that joinder allows the jury to draw impermissible inferences as to his guilt on the extortion charges. Ray contends the events which form the basis of the alleged Hobbs Act violations are relevant on the issue of intent as to the tax counts, but that evidence related to the tax evasion charges is inadmissible to prove the Hobbs Act counts under Fed.R.Evid. 404(b). On these grounds, Ray argues that a joint trial of the tax and Hobbs Act counts would permit the jury to consider the Hobbs Act evidence in the tax case, but would require the jury to exclude evidence of the tax fraud in its consideration of the Hobbs Act charges. Defendant submits that no jury realistically be expected to follow the court's instruction to bifurcate their knowledge of the facts in this manner.

The government objects to the severance arguing that Ray has failed to demonstrate "compelling prejudice" in the event that the charges are tried together. The government argues that the proof of tax fraud and Hobbs Act charges significantly overlaps; that despite the concessions made in brief by Ray (except for willfulness), the government will have to prove at trial all the elements of the offenses. The government contends that evidence on the tax counts is relevant and admissible on the extortion charges, and that evidence concerning the receipt of the illegal money is relevant to prove Ray's willful evasion of taxes. Moreover, the government submits that Ray has failed to carry his burden of showing that the possible prejudice outweighs the public interest in judicial economy, and that any prejudice resulting from joint trial on the counts, cannot be alleviated by the trial court.

■ Federal Rule of Criminal Procedure 14 allows the trial court, in its discretion, to grant a severance, even if joinder is proper under Rule 8(a). In order to secure a Rule 14 severance, however, the defendant is required to make a showing of "compelling prejudice," that cannot be prevented by lesser measures. See *United States v. Coppola*, 788 F.2d 303, 307 (5th Cir. 1986); *United States v. Wheeler*, 802 F.2d 778 (5th Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987). The defendant must show something more than the fact that a separate trial may offer him a better chance of acquittal. *United States v. Park*, 531 F.2d 754, 762 (5th Cir.1976).

■ The only specific prejudice alleged by Ray is based on the assumption that evidence relating to the tax counts is not admissible to prove the Hobbs Act charge. In light of this assumption, Ray argues that if the two sets of charges are tried together, the presentation of evidence of tax fraud will impermissibly influence the jury's decision on the Hobbs Act counts.

The court has not yet ruled on the evidentiary issues raised in defendant's briefs. The court finds, however, that the assumption upon which defendant's argument for severance is based, merely raises the possibility of some prejudice and fails to establish the specific, compelling prejudice required for the court to grant the severance motion. Defendant has also failed to demonstrate that cautionary instructions to the jury, will not alleviate any prejudice which may result from the joint trial of the charges against him.

Accordingly, defendant's motion for severance of Counts V, VI, VII and VIII, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, is hereby DENIED.