931 F.2d 55
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby Joe HARRIS, Defendant-Appellant.
 No. 90-5078.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided April 23, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville. Joe F. Anderson, Jr., District Judge. (CR-90-23)
 David Garrison Hill, Hill, Wyatt & Bannister, Greenville, S.C. (argued), for appellant; O. W. Bannister, Jr., Hill, Wyatt & Bannister, Will T. Dunn, Jr., Greenville, S.C., Gedney M. Howe, III, Law Offices of Gedney M. Howe, III, Charleston, S.C., on brief.
 David Jarlath Slattery, Assistant United States Attorney, Columbia, S.C. (Argued), for appellee; E. Bart Daniel, United States Attorney, Columbia, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before CHAPMAN, Circuit Judge, TERRENCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation, and FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant was convicted by a jury of 17 counts of violating the Hobbs Act, 18 U.S.C. Sec. 1951, on charges that he extorted money from a natural gas supplier under color of his official right as general manager of Clinton-Newberry Natural Gas Authority. Harris claims error in that (1) there was not sufficient evidence to support the jury's finding that he was acting "under color of official right," (2) the trial judge denied his motion for acquittal, and (3) the trial judge failed to instruct the jury that active inducement by the defendant of the payment was an essential element of a Hobbs Act offense. We find no merit to any of these exceptions, and we affirm.
 
 
 2
 * The Clinton-Newberry Natural Gas Authority ("the Authority") was created by the South Carolina General Assembly in 1952 and is a corporate body having perpetual succession. It is governed by a board of seven members including the mayors of both Clinton and Newberry and two members of the City Council of each city. The day-to-day operation of the Authority is delegated to the general manager who is the only person with authority to purchase natural gas. The general manager is paid a salary and does not receive any commission or other remuneration for purchasing natural gas. The general manager participates in the State Retirement System and is covered by the South Carolina Local Government Health Insurance Program.
 
 
 3
 Bobby Joe Harris worked for the Authority for more than 36 years and served as general manager since 1972. Until natural gas was deregulated in 1984, Harris purchased gas exclusively from Transcontinental Pipeline and South Carolina Pipeline. William J. Barrett, a Houston businessman, was director of marketing for Transcontinental Gas Pipeline from 1979 to 1985. In May 1985, Barrett started his own company known as RMT for the purchasing, selling and transporting of natural gas. From 1985 through 1987, RMT did no business with the Authority although Barrett knew Harris.
 
 
 4
 In 1988, Harris was in Houston on business and met Barrett. Harris stated that he could not get all of the gas he needed, and Barrett proposed RMT as a source of the needed product. Shortly thereafter, Barrett and Harris entered into a letter of agreement dated February 8, 1988 which provided that RMT and Harris form a joint venture and that Harris share the profits of any new natural gas sales he could bring to RMT. Under this agreement, Harris was to be paid 50 percent of the profit produced by any new business he generated. RMT had not sold to the Authority previously, so any sales to the Authority would be considered new business. RMT did not pay commissions to anyone else with whom it did business, and between April 1988 and July 1989, the Authority purchased natural gas from RMT on 17 separate occasions. On each occasion, upon receipt of the Authority's check, RMT would figure its profit and then issue a check to Bobby Joe Harris for 50 percent of the profit. The first two checks were used to purchase certificates of deposit from a Houston bank, the next 13 checks were deposited in Harris' account in a Houston bank, and the last two checks were mailed to Harris' wife because it had been learned that an investigation was underway. Harris received a total of $426,000 from RMT. Harris was the only natural gas purchaser paid a fee or commission by RMT, and there was testimony that it is not an industry practice for full-time salaried purchasing agents to receive fees or commissions for purchasing gas for public gas authorities.
 
 II
 
 5
 The Hobbs Act is found at 18 U.S.C. Sec. 1951 and provides in part:
 
 
 6
 (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
 
 
 7
 (b) As used in this section--
 
 
 8
 .............................................................
 
 
 9
 ...................
 
 
 10
 * * *
 
 
 11
 (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
 
 
 12
 The statute does not define "official right" nor does it indicate who is a public official within the meaning of the Act.
 
 
 13
 Appellant contends that the evidence was not sufficient to support a jury's finding beyond a reasonable doubt that he was a public official acting "under color of offical right." The trial judge charged the jury:
 
 
 14
 I instruct you that the Clinton/Newberry Natural Gas Authority is a body corporate and politic created by the State Legislature, and it is a public authority. If you find from the evidence beyond reasonable doubt that Bobby Joe Harris was the manager of the authority, that the authority paid his salary, and that he and other employees of the authority participated in the State Employees Retirement Program, and the County and Municipal Employees Health Insurance Program, then you are to find that he is a public official within the meaning of the law.
 
 
 15
 Harris contends that this instruction is insufficient to enable the jury to find beyond a reasonable doubt that Harris was a public official for the purposes of the Act. We can find no support for this position. The Courts of Appeals have found a variety of positions to be covered by the Hobbs Act. See United States v. Hathaway, 534 F.2d 386 (1st Cir.1976) (an appointed executive director of a housing authority was covered by the Act); United States v. O'Grady, 742 F.2d 682 (2d Cir.1984) (en banc) (a supervisor of the quality control section of the New Car Engineering of the New York City Transit Authority was covered); United States v. Reilly, 456 F.Supp. 211 (E.D.Pa.), aff'd, 601 F.2d 577 (3d Cir.1979) (director of facilities at a state college found to be a public official and covered); United States v. Dozier, 672 F.2d 531 (5th Cir.1982) (the Louisiana Commissioner of Agriculture was covered); United States v. Hedman, 630 F.2d 1184 (7th Cir.1980) (city building inspectors and city electrical inspectors were covered); United States v. Martin, 751 F.2d 258 (8th Cir.1984) (director of a municipal convention facility was covered). From our circuit, we have two cases in which the question of who is a public official was not directly presented, but Hobbs Act convictions were sustained. In United States v. Barber, 668 F.2d 778 (4th Cir.1982), the defendant was a former Alcoholic Beverage Control Commissioner of the State of West Virginia, and in United States v. Paschall, 772 F.2d 68 (4th Cir.1985), the defendant was a North Carolina resident highway engineer.
 
 
 16
 Appellant was clearly covered by the Hobbs Act. He was a general manager of a public gas authority created by the State General Assembly. The Authority was authorized to use county and state rights of way, to exercise the power of eminent domain, and to appoint officers, employees, servants and fix their compensation. As general manager, the appellant was responsible for the day-to-day operations of the Authority, and he had sole responsibility for the purchase of natural gas. Six of the seven members of the board of directors were elected officials. The appellant was clearly a public official for Hobbs Act purposes. There is no requirement that a person be an elected public official in order to act "under color of official right" within the meaning of the Hobbs Act.
 
 III
 
 17
 Appellant argues that there was not sufficient evidence to sustain his conviction and the trial judge should have granted his motion for acquittal at the close of the government's case. We find no merit in this argument. Appellant contends that the government failed to show that Barrett's motivation for paying Harris a commission was due to Harris' position as general manager of the Authority and that the government offered no evidence on this point. The evidence outlined in Part I hereof was sufficient to raise an inference that the money was paid to Harris because of his position as the person responsible for buying gas for the Authority. Harris points to Barrett's testimony that his relationship with Harris was a joint venture and that Harris' contribution to the venture was his personal contacts with people in the industry as a whole and not Harris' position as general manager of the Authority. This testimony was heard by the jury, which found it unpersuasive.
 
 
 18
 It is not necessary for the government to offer direct evidence of Harris' state of mind in receiving the payments. The clandestine payments sent to Harris' Houston bank account, together with the other evidence mentioned above, were more than sufficient to raise an inference that Harris' intention in receiving the payments was criminal rather than innocent.
 
 IV
 
 19
 Our opinion in United States v. Paschall, supra, clearly forecloses appellant's third exception. Appellant claims that the trial court erred by failing to state that active inducement by a public official, in the sense that he overtly solicited or demanded payment, is an essential element of a Hobbs Act offense. In Paschall, Judge Haynsworth stated:
 
 
 20
 It has been held that inducement by a public official, in the sense that he overtly solicited the payment, is not an essential element of the offense. United States v. Hedman, 630 F.2d 1184 (7th Cir.1980); United States v. Jannotti, 673 F.2d 578, 595 (3d Cir.1982). Nor is it necessary for the government to prove as a part of its case that the public official misused his office in the sense that he granted some benefit or advantage to his benefactor to which the benefactor was not entitled. United States v. Trotta, 525 F.2d 1096, 1100 (2d Cir.1975); United States v. Scacchetti, 668 F.2d 643, 648 (2d Cir.1982); United States v. Kuta, 518 F.2d 947, 950 (7th Cir.1975). It is enough that the benefactor transfers something of significant value to the public official with the expectation that the public official will extend to him some benefit or refrain from some harmful action, and the public official accepts the thing of significant value knowing that it has been transferred to him because of his office.
 
 
 21
 Paschall, 772 F.2d at 71-72.
 
 
 22
 The evidence against Harris was overwhelming. During a period of 15 months, Harris was paid a total of $426,000 to purchase gas from RMT. Harris had never been paid a fee or commission for purchasing gas from any other supplier during the 17 years that he had held his position as general manager of the Authority, and RMT had never paid a commission or fee to any other purchaser of its product.
 
 
 23
 AFFIRMED.