**UNITED STATES of America,**

**v.**

**Michael FRANCIS, Defendant.**

**No. 97 Cr. 0008(RWS).**

United States District Court,
S.D. New York.

Aug. 15, 1997.

**290**

Mary Jo White, U.S. Atty. for the Southern Dist. of New York, New York City (Jane A. Levine, Asst. U.S. Atty., of Counsel), for U.S.

Galasso, Langoine & Goidell, Melville, NY (Mark E. Goidell, of Counsel), for Michael Francis.

## OPINION

SWEET, District Judge.

In this criminal action, the defendant Michael Francis ("Francis") has moved, pursuant to Fed.R.Crim.P. 12(b), to dismiss the indictment for lack of federal jurisdiction or as facially defective, or to transfer the case to the Northern District of California pursuant to Fed.R.Crim.P. 21. For the reasons below, the indictment will be dismissed as facially defective.

### Prior Proceedings

Indictment 97 Cr. 0008(RWS) was handed up on January 7, 1997. It contains one count, which charges that Francis, a California resident, "unlawfully, wilfully, and knowingly did transmit in interstate commerce communications containing threats to injure the person of another," in violation of 18 U.S.C. § 875(c). On April 24, 1997, Francis was arraigned and entered a plea of not guilty. Francis filed the instant motion on May 28, 1997. Oral arguments were heard and the motion was fully submitted on June 18, 1997.

### Facts

The Government charges that Francis placed six telephone calls on February 22, 1996 from his residence in Santa Cruz, California to a telephone number in San Francisco, California where the Complainant had once resided. The Complainant received six calls, in the form of voice mail messages, in New York, where he was located at the time. The Complainant recognized the caller on each of the six calls to be Francis.

The Complainant received the six telephone calls in New York via a call-forwarding service that automatically forwarded the Complainant's telephone calls from his California telephone number to his New York telephone number. The call-forwarding service activated a "switch" function that automatically routed the Complainant's telephone calls coming into his California telephone number to his New York telephone number.

No manual actions were involved in transferring the calls.

The Complainant also subscribed to a voice-mail message service through NYNEX, his New York telephone carrier. The message service operated like an answering machine. If the telephone was not answered after a designated number of rings, the caller heard a message recorded by the Complainant and was offered an opportunity to leave a recorded message. The Complainant could retrieve messages by dialing into his voice-mail system. The Government has a tape of the six telephone calls the Defendant made to the Complainant on February 22, 1996. Among other things, the Defendant threatened to "blow [the complainant's] fucking head off," "cut [the complainant] up into a thousand goddamn fucking tiny pieces," "slit [the complainant's] fucking throat," and kill the complainant.

*Discussion*

### I. *Federal Jurisdiction Exists*

■ Francis moves to dismiss the indictment for lack of federal jurisdiction pursuant to Fed.R.Crim.P. 12(b). The Defendant is charged under 18 U.S.C. § 875(c), which provides that it is unlawful to transmit "in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." Francis contends that federal jurisdiction is lacking because he did not know his calls were being forwarded across state lines.

■ However, criminal statutes founded on the government's commerce-clause power generally do not require that an offender have knowledge of the interstate nexus of his actions. *United States v. Darby,* 37 F.3d 1059, 1067 (4th Cir.1994), *cert. denied,* 514 U.S. 1097, 115 S.Ct. 1826, 131 L.Ed.2d 747 (1995); *see also United States v. Blackmon,* 839 F.2d 900, 907 (2d Cir.1988) (in a wire fraud prosecution it is not necessary to show that the defendant knew interstate communications were involved). The element of interstate commerce is a device through which to obtain federal jurisdiction, and does not require a mens rea element. *Darby,* 37 F.3d at 1067; *See United States v. Blassingame,* 427 F.2d 329, 330–31 (2d Cir.1970) (statute prohibiting use of interstate wires to execute fraudulent scheme does not condition guilt upon knowledge that interstate communication is used), *cert. denied,* 402 U.S. 945, 91 S.Ct. 1629, 29 L.Ed.2d 114 (1971). Thus, although the Government must allege that the telephone calls at issue crossed state lines, it need not allege that Francis was aware of the interstate nexus. *See Darby,* 37 F.3d at 1067. Whether Francis' knew that his communications traveled in interstate commerce is irrelevant to jurisdiction.

■ Francis also asserts that Section 875(c)'s jurisdictional predicate is not satisfied, because he did not "cause" the transmission of the calls over state lines. Francis contends that the action of the call-forwarding service, as an intervening cause of the interstate transmission of his message, vitiates federal jurisdiction.

Adoption of Francis' theory that the telephone company's actions undermine the interstate nature of the transmission would defeat federal jurisdiction over virtually any offense charged under § 875(c). Even in the absence of a call-forwarding service, an interstate telephone call is transmitted across state lines by telephone companies, not the defendant. Francis advances no authorities that support his novel proposition. Indeed, the case upon which Francis most heavily relies strongly suggests that the manner in which the communication facility operates in conveying a message is irrelevant to determining jurisdiction where, as here, the parties to the communication were located in different states. *See United States v. Paredes,* 950 F.Supp. 584, 590 (S.D.N.Y.1996) (defendant's use of his paging system, which transmitted signals to a tower across state lines, did not satisfy interstate nexus requirement because the sender and the recipient were both located in the same state; jurisdictional analysis focuses on location of sender and receiver); *compare United States v. Stevens,* 842 F.Supp. 96 (S.D.N.Y.1994) (use of paging system which transmits interstate signals satisfies interstate nexus for federal jurisdiction, even though paged party was ultimately reached in the same state as the paging party). It is undisputed that Francis placed telephone calls in California that were

received in New York. The fact that the telephone constitutes an "intervening cause" is irrelevant to the jurisdictional question.

■■■ Even if causation is relevant to the jurisdictional issue, the fact that the calls were forwarded does not warrant dismissal prior to trial. It is an axiomatic premise of our criminal law that a person cannot be liable for criminal conduct which he has not "caused." *United States v. Kelner*, 534 F.2d 1020, 1022 (2d Cir.), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976). Yet, it is also a general principle of causation in criminal law that an individual may be held liable if he is a cause in fact of the criminal violation, even though the result which the law condemns is achieved through the actions of innocent intermediaries. *Id.*

■■■ An intervening act, tortious or criminal, will insulate a defendant from liability only when the subsequent act could not have been reasonably anticipated by the defendant. *Cullen v. BMW of North America, Inc.*, 691 F.2d 1097, 1101 (2d Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983). In general, questions of whether an intervening act severs the chain of causation depend on the foreseeability of the intervening act and should be determined by the finder of fact. *McCarthy v. Sturm, Ruger and Co., Inc.*, 916 F.Supp. 366, 372 (S.D.N.Y.1996), *aff'd*, 119 F.3d 148 (2d Cir. 1997). Francis took action without which the communication at issue would not have occurred. Francis called the Complainant's telephone number six times and his voice was recorded while making threats to the Complainant. Whether or not the call forwarding service is an unforeseeable intervening act by a third party which breaks the causal chain is a factual question, and it thus would be inappropriate to dismiss the indictment prior to trial.

Finally, Francis asserts that federal jurisdiction here is undermined by the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). *Lopez*, however, is inapposite.

There, the Supreme Court addressed a facial challenge to the Gun–Free School Zones Act of 1990 ("GFSZA"), 18 U.S .C. § 922(g)(1)(A), which criminalized the possession of a gun, *simpliciter*, in or near a school. *Lopez*, 514 U.S. at 550, 115 S.Ct. at 1626. The Supreme Court held that the GFSZA exceeded Congress's authority under the Commerce Clause. Unlike § 875(c), the GFSZA did not require an interstate jurisdictional nexus. *Id.* at 561, 115 S.Ct. at 1631 (noting that the statute does not contain a jurisdictional element that would ensure that the firearm possession in question affects interstate commerce). Because § 875(c) requires an interstate jurisdictional nexus, it does not suffer from the same constitutional infirmity as the GFSZA.

Accordingly, this court has subject-matter jurisdiction over the indictment.

## II. *The Indictment Is Facially Defective*

Francis has moved to dismiss the indictment, pursuant to Fed.R.Crim.P. 12(b), as facially defective because it does not allege an essential element of the charged offense. In particular, Francis contends that the Government must allege that he subjectively intended the communication to be perceived as a threat and asserts that the indictment fails to make such a charge. The Government, in contrast, maintains that it must prove only that Francis acted with the intent to transmit interstate communications, and that an objective, reasonable person in the circumstances would interpret those communications as a threat.

■■■ The essential actus reus elements of an offense charged under § 875(c) are: (1) the defendant transmitted a communication in interstate commerce; (2) the communication contains a threat; and (3) the threat must be a threat to injure the person of another. *See United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir.1992), *cert. denied*, 505 U.S. 1206, 112 S.Ct. 2997, 120 L.Ed.2d 874 (1992).[1]

1. An argument that the government must also prove that the defendant intended to carry out his threat has been advanced in other cases. However, the Second Circuit has held that a defendant's intent or ability to carry out his threat is not an element of a charge under § 875(c). *See United States v. Kelner*, 534 F.2d 1020, 1022 (2d Cir.1976); *see also, e.g., United*

■ The Government must plead and establish the appropriate state of mind for each element of the offense, and the same mens rea standard need not apply to each element. There is no dispute that the government must prove specific intent regarding the first element, that is, that Francis intended to transmit the statements that were received by the complainant. A defendant can not be prosecuted for mistakenly or inadvertently transmitting a communication containing a threat to injure. *See DeAndino*, 958 F.2d at 148; *see also Darby*, 37 F.3d at 1065.

■ The dispute here arises regarding what degree of culpability is applicable to the second element of the offense: that the communication contain a threat. In theory, this element could be interpreted to require proof that: (1) the communication was objectively threatening (*i.e.*, that the communication was a "real" or "true" threat); or (2) the defendant intended the communication to be threatening or knew that it would be taken as threatening; or (3) both. Although the statute does not specifically articulate a mens rea requirement, the "mere omission of any mention of intent will not be construed as eliminating that element from the crime." *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952). Thus, some degree of mens rea must be charged in the indictment.

The Hon. Charles Haight of this court, in interpreting the parallel mail threat statute, 18 U.S.C. § 876 (prohibiting transmitting threats through mail), has held that the Government must prove both that a communication was objectively threatening and that the defendant intended to threaten. *United States v. Calvert*, No. 89 Cr. 0006, 1990 WL 33592, *4 (S.D.N.Y. March 23, 1990).

In discussing the objective component of the threat element, the *Kelner* court stated, "so long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution, the statute may properly be applied." *Kelner*, 534 F.2d at 1027. In considering § 876, the Second Circuit has also held that whether a given writing constitutes a threat is an objective test, that is, whether an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury. *United States v. Malik*, 16 F.3d 45, 49 (2d Cir.) (rejecting defendant's argument that letters did not contain "threats" within meaning of statute, because objective recipient would view words as threatening), *cert. denied*, 513 U.S. 968, 115 S.Ct. 435, 130 L.Ed.2d 347 (1994).

■ This objective component of the threat element is necessary to ensure that speech protected by the First Amendment is not punished or chilled. A statute such as § 875(c), "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Kelner*, 534 F.2d at 1026 (quoting *Watts v. United States*, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (per curiam)).[2]

States v. Twine, 853 F.2d 676, 681 n. 4 (9th Cir.1988); *United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir.1979). In *Kelner*, the defendant was convicted of transmitting in interstate commerce a threat to injure the person of another under § 875(c). *Kelner*, 534 F.2d at 1022. The defendant challenged his conviction under § 875(c) arguing, *inter alia*, that his statements were not threats within the meaning of the statute because he had no intention of actually using force. *Id.*, 534 F.2d at 1022. The court rejected the defendant's argument, stating that under § 875(c) it is not necessary for the government to prove that the defendant had a specific intent or a present ability to carry out his threat. *See Id.*, 534 F.2d at 1023, 1025.

2. The First Amendment generally prevents the government from proscribing speech. *R.A.V. v. St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992). Yet, freedom of speech has never been interpreted "...to give absolute protection to every individual to speak whenever or wherever he pleases, or to use any form of address in any circumstances that he chooses." *Cohen v. California*, 403 U.S. 15, 19, 91 S.Ct. 1780, 1784, 29 L.Ed.2d 284 (1971); *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, 62 S.Ct. 766, 768, 86 L.Ed. 1031 (1942) (not all speech enjoys the protection of the first amendment). From 1791 to the present our society has permitted restrictions upon the content of speech in a few limited areas, which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly out-

Although the Supreme Court has not defined the permissible scope of § 875(c), it has considered the constitutionality of the application of a similar statute punishing threats against the President. *Watts,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664. In *Watts,* the Supreme Court held that a statement must constitute a "true threat" in order for its prohibition to be constitutional. *Id.* at 708, 89 S.Ct. at 1401. The Supreme Court construed the word "threat" to exclude statements which are not, when taken in context, "true threats," because they are conditional or made in jest. *Id; Kelner,* 534 F.2d at 1026; *see also United States v. Baker,* 890 F.Supp. 1375, 1381–82 (E.D.Mich.1995), *aff'd sub nom, United States v. Alkhabaz,* 104 F.3d 1492 (6th Cir.1997). The Supreme Court also distinguished true threats from careless statements or political hyperbole. *See Watts,* 394 U.S. at 708, 89 S.Ct. at 1401.

In *Kelner,* the Second Circuit drew on *Watts* in evaluating the constitutional limits of a prosecution under § 875(c). "The purpose and effect of the Watts constitutionally-limited definition of the term 'threat' is to insure that only unequivocal, unconditional and specific expressions of intention immediately to inflict injury may be punished—only such threats, in short, as are of the same nature as those threats which are ... 'properly punished every day under statutes prohibiting extortion, blackmail and assault without consideration of First Amendment issues.'" *Kelner,* 534 F.2d at 1027 (quoting *Watts v. United States,* 402 F.2d 676, 690 (U.S.App. D.C 1968), *rev'd,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)).

 In this case, the indictment sufficiently alleges that Francis' statements constituted a true threat and thus satisfies the objective component of the "threat" element. Francis' statements on their face and under the circumstances appears so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution. *See Kelner,* 534 F.2d at 1027.

 However, whether Francis intended for his communication to be threatening is also an essential component of the second element of the offense charged. *See Calvert,* 1990 WL 33592 at *4. The distinction between the two questions of whether a statement is objectively a "true threat" and whether the speaker subjectively knew it would or intended that it be taken as a threat is important but often confused. *Baker,* 890 F.Supp. at 1381. The *Watts* decision also indicated that whether a statement constitutes a true threat in light of the First Amendment is distinct from the question of the defendant's intent: "whatever the 'willfulness' requirement implies, the statute initially requires the government to prove a 'true threat.'" *Watts,* 394 U.S. at 708, 89 S.Ct. at 1401; *Baker,* 890 F.Supp. at 1381. Although the content of the speech may be used to prove both the objective and subjective components of the "threat" element, it is not sufficient to sustain a conviction for the government to do no more than prove that the defendant "knowingly" transmitted a message that the recipient would reasonably regard as threatening. *See Calvert,* 1990 WL 33592, at *4. The government must also prove that the "critical element" of the defendant's subjective mental state. *Id.* (citing *Carrier,* 672 F.2d at 305). A defendant may intend to threaten the recipient of a communication, but if the language is ambiguous or could not reasonably be regarded as threatening by the recipient, no crime has been committed. Conversely, the language may be threatening, but the government must still prove that the defendant intended a threat. *Id.*

The parties have cited to no Second Circuit cases that squarely address whether subjective intent to threaten must be pleaded and proved in a § 875(c) prosecution. The Ninth Circuit, however, has held that § 875(c) creates a specific intent crime. In *Twine,* the

weighed by the social interest in order and morality." *R.A.V.,* 505 U.S. at 383, 112 S.Ct. at 2543 (citing *Chaplinsky* at 572, 62 S.Ct. at 769).

The government has a legitimate interest in reducing the climate of violence to which true threats of injury contribute. *Kelner,* 534 F.2d at

1026. True threats of physical injury, like "fighting words," are viewed as outside first amendment protection, in part because they do not contribute to the exchange of ideas. *See R.A.V.,* 505 U.S. at 383, 112 S.Ct. at 2543; *United States v. Carrier,* 672 F.2d 300, 306 (2d Cir.1982).

Ninth Circuit held that the transmission of threats via telephone and mail required the government to prove that a defendant had a specific intent to threaten.[3] *Twine,* 853 F.2d at 680. The court reasoned that such a requirement was necessary to ensure that a person would not be convicted for an act because of mistake, inadvertence or another innocent reason. *Id.; cf. United States v. Fulmer,* 108 F.3d 1486, 1491 (1st Cir.1997) ("We believe that the appropriate standard under which a defendant may be convicted for making a threat is whether he should have reasonably forseen that the statement he uttered would be taken as a threat.")

A number of other circuits, however, have held that § 875(c) is a general intent crime. *See United States v. Alkhabaz,* 104 F.3d 1492, 1494 (6th Cir.1997) (§ 875(c) is a general intent statute); *United States v. Myers,* 104 F.3d 76, 80–81 (5th Cir.) (same), *cert. denied,* —— U.S. ——, 117 S.Ct. 1709, 137 L.Ed.2d 834 (1997); *United States v. Himelwright,* 42 F.3d 777, 782–83 (3d Cir.1994) (same); *Darby,* 37 F.3d at 1063–64 (same); *DeAndino,* 958 F.2d 146.

In *DeAndino,* the Sixth Circuit reversed a district court's ruling that an indictment charging a violation of § 875(c) was insufficient for failing to allege a specific intent to threaten and expressly criticized *Twine. Id.* at 149. The court took issue with *Twine*'s concern about convicting a person for inadvertence or mistake. The *DeAndino* court reasoned that proof of intent to threaten was not necessary to protect inadvertently threatening utterances, because the prosecution must prove that the threat was a "real threat" as opposed to a mistaken or an inadvertent statement. *Id.* However, if the court said, in effect, that proof that a statement is a real threat entails proof that the statement was not inadvertently threatening, then proof of a real threat requires proof of intent to threaten, precisely as the Ninth Circuit held. If, on the other hand, the court meant to say that proof of a real threat requires showing only that the making of the statement was not inadvertent, but not that the statement was intended to threaten, then a defendant is not protected from conviction for making a statement that is inadvertently, but objectively, threatening.

 The *DeAndino* court also noted that *Twine*'s holding was in tension with the principle of statutory construction whereby a statute that does not articulate a mens rea requirement is presumed to create a general intent crime. *Id.* at 149. However, the heightened First Amendment concerns raised by a statute that proscribes pure speech warrant a departure from that presumption in this instance.[4] Moreover, the meanings of the terms "general intent" and "specific intent" often vary with the circumstances. In a general intent crime, the government needs to prove only that the defendant intended to "do what the law forbids. It is not necessary for the prosecution to prove that the defendant intended the precise harm or the precise result which eventuated." *Black's Law Dictionary* 560 (Abridged 6th Ed.1991). In a specific intent crime, the government must prove that the defendant intended to accomplish the precise act which the law prohibits. *Id.* However, the terms are sometimes used to distinguish between "general intent" crimes that require knowing or reckless behavior and "specific intent" crimes that require knowledge that one's actions violate the law and an intent to so violate the law. *See Ratzlaf v. United States,* 510 U.S. 135, 138–141, 114 S.Ct. 655, 657–59, 126 L.Ed.2d 615 (1994); see also, *Liparota v. United States,* 471 U.S. 419, 433 n. 16, 105 S.Ct. 2084, 2092 n. 16, 85 L.Ed.2d 434 (potential for confusion in use of term specific intent). Thus, even if the presumption of

---

**3.** A district court in the Ninth Circuit, in *United States v. King,* 920 F.Supp. 1078, 1080 (C.D.Cal. 1996), recently refused to follow the precedent set by *Twine* and held that § 876 is a general intent crime. The court reasoned that the *Twine* decision had been impliedly overruled because it had not been cited in subsequently published cases regarding related offenses. *Id.* at 1079.

**4.** The *Kelner* Court declined to impose a requirement of specific intent to *carry out* the threat, in part because the *Watts* limitation of the word "threat" satisfied First Amendment concerns as fully as would such a requirement. *Kelner,* 534 F.2d at 1026. The Court did not rule on whether the objective threat standard also adequately protects speech that may seem objectively threatening, but is not so intended.

general intent applies here, the government still must plead and prove that Francis knew or was reckless in not knowing that his words would be taken as a threat, although it need not prove that he intended or desired for them to be taken that way. *Cf. Fulmer,* 108 F.3d at 1491 (criminal liability for threat may be imposed only if reasonable defendant would have forseen that statement would be threatening to recipient).

Accordingly, § 875(c) requires that the government plead and prove that Francis subjectively knew or intended that his statements would be taken as threatening. The remaining question is whether the indictment satisfies this requirement.

▪ Rule 7(c)(1), Fed.R.Crim.P., states in pertinent part that "the indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." This rule is designed to eliminate prolix indictments and to simplify procedures. *Carrier,* 672 F.2d at 303. An indictment is sufficient if it: (1) contains the elements of the offense charged; (2) fairly informs the defendant of the nature of the criminal activity with which he is charged; and (3) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Payden,* 613 F.Supp. 800, 807 (S.D.N.Y.1985) (citing *Carrier,* 672 F.2d at 303); *see also United States v. Blohm,* 585 F.Supp. 1112, 1113–1114 (S.D.N.Y.1984).

▪ The Second Circuit has "sustained indictments which track the language of a statute and, in addition, do little more than state time and place in general terms." *United States v. Trotta,* 525 F.2d 1096, 1099 (2d Cir.1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). The indictment may set forth the offense in the words of the statute itself, as long as the words themselves fully, directly, expressly and unambiguously set forth the essential elements of the charged offense. *Payden,* 613 F.Supp. at 807–808. The language of the statute must also be accompanied by a statement of the facts and circumstances that will inform the defendant of the specific offense, coming under the general description, with which he is charged. *Id.*

The Second Circuit has held that indictments based substantially on the utterance of words should rarely be dismissed for failure to allege sufficient facts, since the defendant's intention in uttering the allegedly threatening words, and the circumstances surrounding their utterance, are generally questions best left to the jury. *United States v. Carrier,* 672 F.2d 300, 304, 306 (2d Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982); *See also Calvert,* 1990 WL 33592 at *2; *United States v. Ferrugia,* 604 F.Supp. 668, 674 (E.D.N.Y.), *aff'd,* 779 F.2d 36 (2d Cir.1985). However, where factual proof of a "true threat" is insufficient as a matter of law and where the language set forth is so facially insufficient that it cannot possibly amount to a true threat, the indictment may be properly dismissed. *Id.* at 306.

▪ In the present case, the indictment contains a plain and concise statement of the essential facts constituting the offense charged. The facts clearly support an inference that Francis intended his words to be threatening, or at least knew they were likely to be taken as threatening. Objectively threatening words will generally support a permissible, though by no means necessary, inference of intent to threaten.

▪ However, although the indictment tracks the statutory language, stating that Francis "did transmit in interstate commerce communications containing threats to injure the person of another," the government failed to charge that Francis subjectively knew or intended his communication to be threatening. Thus, the indictment failed to "fully, directly, expressly and unambiguously set forth the essential elements of the charged offense." *Payden,* 613 F.Supp. at 807–808. The indictment states that Francis "unlawfully, wilfully, and knowingly did transmit in interstate commerce" threatening statements. However, according to the Government's own reading of its indictment, this language only reflects that "the defendant knowingly transmitted interstate communications which a reasonable recipient would interpret as a threat." Gov't. Mem. at 11. At best, then, the indictment is ambiguous re-

garding Francis' mens rea with respect to the threat element. Because the Government has not adequately alleged mens rea, the indictment will be dismissed.

## Conclusion

For the reasons set forth above, the indictment is hereby dismissed.

It is so ordered.